**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x
|  |  |
|---|---|
| In re: | : Chapter 7 |
|  | : |
| PARK PLACE DEVELOPMENT PRIMARY, LLC,[1] | : Case No. 21-10849 (CSS) |
|  | : |
|  | : **Objection Deadline:** |
| Alleged Debtor. | : **July 20, 2021 at 4:00 p.m. (ET)** |
|  | : **Hearing Date:** |
|  | : **August 18, 2021 at 11:00 a.m. (ET)** |
-------------------------------------------------------- x

**MOTION OF THE ALLEGED DEBTOR PURSUANT TO SECTIONS 303 AND 305 OF
THE BANKRUPTCY CODE FOR DISMISSAL OF, OR ABSTENTION
FROM, THE INVOLUNTARY BANKRUPTCY PETITION**

Park Place Development Primary, LLC (the "Alleged Debtor"), through its undersigned

counsel, hereby files this motion (the "Motion") in response to the involuntary chapter 7 petition

filed on May 24, 2021 (D.I. 1) (the "Involuntary Petition") by Permasteelisa North America Corp.

("PNA"), Construction Realty Safety Group Inc. ("CR Safety"), Trade Off Plus, LLC ("Trade

Off"), Domani Inspection Services, Inc. ("Domani"), S&E Bridge & Scaffold LLC ("S&E"), and

Ismael Leyva Architect, P.C. ("ILA") (collectively, the "Petitioning Creditors"). By this Motion,

the Alleged Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A**

(the "Proposed Order"), dismissing this case and the Involuntary Petition or, in the alternative,

abstaining from entry of an order for relief on the Involuntary Petition pursuant to Rule 1011 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 12(b)(6) of the Federal

Rules of Civil Procedure (the "Civil Rules"), and Sections 303 and 305 of title 11 of the United

States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). In support of this Motion, the

Alleged Debtor respectfully states as follows:

---

[1] The last four digits of the Alleged Debtor's U.S. tax identification number is 1708. The address of the Alleged Debtor's corporate headquarters is: 31 West 27th Street, 9th Floor, New York, NY 10001.

## SUMMARY OF ARGUMENT[2]

1.       This case is ripe for dismissal or abstention on numerous grounds as it was filed improperly and in bad faith by unqualified petitioning creditors using the filing of the Involuntary Petition and this forum as a substitute for, and tactical advantage in, the pending New York Actions.  The Petitioning Creditors are various parties involved in the Project, however, five of the six Petitioning Creditors do not hold valid recourse claims against the Alleged Debtor and, thus, are not qualified to file an involuntary petition under Section 303(b) of the Bankruptcy Code.  The sixth Petitioning Creditor, Domani, also fails to qualify as a petitioning creditor because its claim against the Alleged Debtor is subject to a *bona fide* dispute as to liability and amount.  While Domani's declaration in support of the Involuntary Petition provides that its claim against the Alleged Debtor is asserted in the Domani Action, Domani fails to acknowledge that the Alleged Debtor filed an answer in the Domani Action, contesting this claim and asserting various defenses thereto.  Moreover, even if Domani held a valid qualifying claim against the Alleged Debtor (which it does not), the Alleged Debtor has more than 12 creditors, requiring that there be at least three qualified petitioning creditors, which does not exist here.  Under the Bankruptcy Code, the Petitioning Creditors have the burden to establish that they are qualifying petitioning creditors.  The Petitioning Creditors have not, and cannot, demonstrate that they are qualified under Section 303(b) of the Bankruptcy Code.  Consequently, the Involuntary Petition must be dismissed.

2.       Additionally, the Petitioning Creditors filed the Involuntary Petition for an improper purpose and in bad faith.  The Petitioning Creditors are all party to at least one of the New York Actions.  The Petitioning Creditors' ability to protect their rights through the New York

---

[2] Capitalized terms used but not defined in the Summary of Argument section are ascribed the definitions provided later in this Motion.

Actions, coupled with the fact that a Receiver was appointed to protect the Project and creditors' interests over a year ago, demonstrate that there is no need for a bankruptcy to protect the interests of the Petitioning Creditors or other potential creditors of the Alleged Debtor.  To the contrary, the Involuntary Petition was motivated by the Petitioning Creditors' unhappiness with the progress of the New York Actions.  Thus, it is clear that the Petitioning Creditors did not file the Involuntary Petition for a valid bankruptcy purpose to benefit the Alleged Debtor and its creditors, but rather filed the Involuntary Petition for an improper, non-bankruptcy purpose, specifically as a collection device and litigation tactic.

3.      If the Court does not dismiss the Involuntary Petition based on the Petitioning Creditors' unqualified status, improper purpose or bad faith, the Court should abstain and dismiss under Section 305(a) of the Bankruptcy Code because abstention is in the best interests of the creditors and the Alleged Debtor.  In addition to all of the aforementioned issues with the Petitioning Creditors and their motives in filing the Involuntary Petition, the interests of the Alleged Debtor's creditors are adequately protected by the New York Actions and the Project's Receiver.  The other forum where the New York Actions are already proceeding is in a better position to handle the myriad issues presented by the Petitioning Creditors, rendering a federal bankruptcy proceeding unnecessary.  Additionally, a bankruptcy will not be economical or efficient, but will only result in a further delay of certain issues and add substantial costs.  The Petitioning Creditors' bad faith and lack of valid bankruptcy purpose also weigh heavily in favor of abstention and dismissal.

#117023999 v7

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.[3]  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      The statutory predicates for the relief requested herein are Sections 303 and 305 of the Bankruptcy Code, Bankruptcy Rule 1011, and Civil Rule 12(b)(6).

6.      Pursuant to Local Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Alleged Debtor consents to the entry of final orders or judgments by the United States Bankruptcy Court for the District of Delaware (the "Court") with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments with respect to this Motion consistent with Article III of the United States Constitution.

## RELEVANT BACKGROUND

### I.      THE ALLEGED DEBTOR AND PETITIONING CREDITORS.

7.      The Alleged Debtor is a Delaware limited liability company and maintains its principal office in New York County, New York.  *See Declaration of Sharif El-Gamal in Support of the Motion of the Alleged Debtor Pursuant to Sections 303 and 305 of the Bankruptcy Code for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition*, filed contemporaneously herewith (the "Alleged Debtor's Declaration"), ¶ 4.

8.      The Alleged Debtor's only asset is a substantially constructed, high-end condominium project located in New York County, New York (the "Project").  *See id.* ¶ 5.  As of

---

[3] The Alleged Debtor reserves the right to move for transfer of venue pursuant to Bankruptcy Rule 1014 and 28 U.S.C. §§ 1408 and 1412.

#117023999 v7

the filing of the Involuntary Petition, the Project is approximately 65% complete and generates no revenue. *See id.* ¶¶ 6–7.

9.      The Alleged Debtor has more than twelve (12) creditors.   In fact, the Alleged Debtor has approximately 85 recourse creditors, holding secured and unsecured liabilities in the aggregate of approximately $139,701,496.51. *See id.* ¶ 9.

10.     The most recent Member Appraisal Institute appraisal of the Project prepared by JLL Valuation & Advisory Services, LLC opines that as of June 12, 2019 the "as is" value of the Project is $269,000,000 and the "as complete" value of the Project is $400,300,000. *See id.* ¶ 8.

11.     Thus, the value of the Project is greater than the aggregate amount of the secured and unsecured liabilities asserted against the Alleged Debtor. *See id.* ¶ 10.

12.     Aside from Domani, the Petitioning Creditors' relationships with the Alleged Debtor stem from their respective entry into certain trade agreements with Gilbane Residential Construction LLC ("Gilbane"),[4] which was the general contractor for the Project, *see id.* ¶ 18, or Soho Properties, Inc. ("Soho Properties"), an affiliate of the Alleged Debtor, but not the Alleged Debtor. *See* Involuntary Petition, Ex. 1–6 (collectively, the "Petitioning Creditors' Declarations").

13.     Domani is the only Petitioning Creditor party to a contract with the Alleged Debtor, pursuant to that certain *Professional Services Agreement* dated on or about November 26, 2014, as amended on April 26, 2016 (the "Domani Agreement"). *See* Petitioning Creditors' Declarations, Ex. 4.

---

[4] Gilbane was terminated as general contractor of the Project on or about December 6, 2019. *See* D.I. 1, Ex. 1.

#117023999 v7

14.    Notably, the only nexus that the parties to this Involuntary Proceeding have to Delaware is that the Alleged Debtor is a Delaware limited liability company.  *See* Alleged Debtor's Declaration ¶¶ 4, 12.  The Petitioning Creditors have no significant ties to Delaware as four of the six Petitioning Creditors are based in New York and the other two are based in states other than Delaware.  *See id.* ¶ 11.

## II.    THE PROJECT AND RELEVANT CONTRACTS.

15.    As noted above, the Project is designed to be a high-end condominium space.  To finance construction of the Project, the Alleged Debtor entered into that certain *Building Facility Agreement* dated April 26, 2016 (the "BFA") by and between the Alleged Debtor and various mortgage lenders (collectively, the "Mortgage Lenders").[5]  *See id.* ¶¶14–15.  Per the terms of the BFA, the Project is encumbered by a mortgage in favor of the Mortgage Lenders.  *See id.*[6] Sharia law and New York law govern the BFA and any claims asserted by the parties thereunder. *See* BFA § 21.16; *see generally id.;* Alleged Debtor's Declaration ¶ 16.

16.    In furtherance of the Project, the Alleged Debtor entered into the Domani Agreement, pursuant to which Domani agreed to provide inspection services in connection with the Project.  *See* Petitioning Creditors' Declarations, Ex. 4.

17.    The Alleged Debtor also entered into that certain *Construction Management Agreement* dated on or about March 15, 2015 with Gilbane (as modified, amended, or supplemented, the "CMA"), under which Gilbane agreed to provide construction management

---

[5] A true and correct copy of the BFA is filed in the Foreclosure Action (defined § III.B., *infra*) at NYSCEF Doc. No. 122, Ex. 3.
[6] Contemporaneously with the BFA, the Alleged Debtor and the Mortgage Lenders entered into that certain *Project Facility Assignment of Leases and Rents* dated April 26, 2016 (the "PFA").

services in connection with the Project, including the assembling and hiring of various construction

trades for the Project.  *See* Alleged Debtor's Declaration ¶ 18.

18.    To facilitate construction of the Project, Gilbane entered into agreements

with: PNA; CR Safety; Trade Off; and S&E.  *See* Petitioning Creditors' Declarations, Ex. 1–3, and

5.  Soho similarly entered into an agreement with ILA.  *See id.*, Ex. 6.  These five Petitioning

Creditors are all subcontractors that are not parties to any agreement with the Alleged Debtor.  *See*

*id.*, Ex. 1–3, 5 and 6; Alleged Debtor's Declaration ¶ 19.

## III.    PENDING NEW YORK STATE COURT ACTIONS.[7]

### A.    The Domani Action.

19.    On April 5, 2019, Domani filed a lawsuit against the Alleged Debtor, in the

Supreme Court of New York, County of New York (the "NY Supreme Court"), Index No.

652012/2019, asserting a claim for an alleged breach of the Domani Agreement in the amount of

$47,884.64 (the "Domani Action").  *See id.* ¶ 21.

20.    On May 21, 2019, the Alleged Debtor filed its *Verified Answer*, denying

liability and raising various defenses to Domani's breach of contract claim.  *See* Domani Action,

NYSCEF Doc. No. 5; attached to the Alleged Debtor's Declaration as **Exhibit 1**.  Specifically, the

Alleged Debtor asserts, among other things, that (i) any damage sustained by Domani was a result

of Domani's conduct and negligence; (ii) Domani failed to perform as required under the Domani

Agreement; (iii) Domani failed to perform services it claims were performed; (iv) the Alleged

Debtor does not owe the amount claimed in Domani's complaint and has raised timely objections

to those amounts; and (v) Domani breached the Domani Agreement.  *See id.*

---

[7] Pleadings filed in the New York State Court Actions and referenced herein are electronically accessible, free of charge, via New York State Courts Electronic Filing System ("NYSCEF").  The NYSCEF can be accessed via the following link: https://iapps.courts.state.ny.us/webcivil/FCASMain.

B.      **The Mortgage Lenders' Foreclosure Action.**

21.     On or about April 2019, the Mortgage Lenders failed to fund the Project as required under the BFA.  *See* Declaration ¶ 22.

22.     On March 13, 2020, the Mortgage Lenders filed a *Verified Complaint* against the Alleged Debtor in NY Supreme Court, Index No. 850083/2020, asserting, among other things, various causes of action against the Alleged Debtor under the BFA (the "Foreclosure Action").  *See* Declaration ¶ 23.  The Mortgage Lenders subsequently filed their *First Amended Verified Complaint* that includes all of the Petitioning Creditors as defendants, except for Domani. *See* Foreclosure Action, NYSCEF Doc. No. 119.

23.     On or about March 16, 2020, the court in the Foreclosure Action appointed, on an *ex parte* basis, a receiver (the "Receiver") for the Project to protect the Project and the interests of Alleged Debtor and all of its creditors.  *See* Foreclosure Action, NYSCEF Doc. No. 54; *see also* Alleged Debtor's Declaration ¶ 24.

24.     Several dispositive motions have been filed in the Foreclosure Action, including the Mortgage Lenders' *Motion for Partial Summary Judgment*, *id.*, NYSCEF Doc. No. 371, and the Alleged Debtor's *Motion to Dismiss Complaint*, *id.*, NYSCEF Doc. No. 401, which are now stayed as a result of the filing of the Involuntary Petition.  *See id.*, NYSCEF Doc. No. 405.

25.     As recognized by the Petitioning Creditors, the Foreclosure Action, and in particular the various rights and claims asserted by the Mortgage Lenders under the BFA, is the subject of "substantial disputes" between the parties to the Foreclosure Action, which includes the majority of the Petitioning Creditors.  *See* Petitioning Creditors' Declarations, Ex. 1–3, 5, and 6.

8

**C.**    **The Alleged Debtor's Action Against the Mortgage Lenders.**

26.    On June 9, 2020, the Alleged Debtor initiated a separate action in NY Supreme Court, Index No. 652366/2020, against the Mortgage Lenders for: (i) fraudulent inducement; (ii) fraudulent misrepresentation; (iii) aiding and abetting fraud; (iv) breach of contract; (v) tortious interference with contract; (vi) tortious interference with business relations; (vii) tortious interference with prospective economic advantage; and (viii) civil conspiracy (the "Alleged Debtor's Action," and together with the Domani Action and the Foreclosure Action, collectively, the "New York Actions").  *See* Alleged Debtor's Action, NYSCEF Doc. No. 1.

**IV.    THE PETITIONING CREDITORS AND THE INVOLUNTARY PETITION.**

27.    PNA, CR Safety, Trade Off, S&E, and ILA (five out of the six Petitioning Creditors) hold mechanics' liens against the ***Project***, not the Alleged Debtor.  *See* Petitioning Creditors' Declarations, Ex. 1–3, 5, and 6.  PNA and S&E have allegedly waived $16,750 of their respective mechanics' liens in an attempt to manufacture recourse unsecured claims against the Alleged Debtor, which they maintain makes them eligible petitioning creditors under Section 303(b) of the Bankruptcy Code.  *See id.*, Ex. 1 and 5.  New York law governs the validity, priority, and extent of the mechanics' liens.  *See* Alleged Debtor's Declaration ¶ 17.

28.    PNA, CR Safety, Trade Off, S&E, and ILA also assert alleged third-party beneficiary claims against the Alleged Debtor under the BFA.  *See* Petitioning Creditors' Declarations, Ex. 1–3, 5, and 6.  The Petitioning Creditors are not parties to the BFA nor are they expressly referenced therein.  *See generally* BFA.  New York law governs these alleged claims. *See* ¶¶ 8, 15, *supra*.

29.    PNA separately asserts an alleged contract claim against the Alleged Debtor for expenses incurred in storing various construction materials belonging to the Alleged Debtor.

9

*See* Petitioning Creditors' Declarations, Ex. 1.  PNA bases this claim upon a letter sent from counsel to the Alleged Debtor to Gilbane (not PNA) following Gilbane's termination as the Project's general contractor (the "<u>Gilbane Letter</u>").  *See id*.  A true and correct copy of the Gilbane Letter is attached to the Alleged Debtor's Declaration as **Exhibit 2**.

30.    Domani, the only Petitioning Creditor party to an agreement with the Alleged Debtor, asserts an unsecured claim against the Alleged Debtor as a result of the Alleged Debtor's ***purported*** failure to make payments as required under the Domani Agreement.  *See* Petitioning Creditors' Declarations, Ex. 4.  This claim is based upon the complaint filed in the Domani Action.  *See id.*  Domani, however, falsely testifies that the Alleged Debtor has made no challenges to this claim.  *See id.*  In doing so, Domani ignores the Alleged Debtor's answer filed in the Domani Action, whereby the Alleged Debtor maintains that Domani did not perform as required under the Domani Agreement and, therefore, is not entitled to payment thereunder.  *See* Alleged Debtor's Declaration, Ex. 1.

31.    Despite being parties to the pending New York Actions, the significance of the dispositive motions pending therein, the involvement of the court-appointed Receiver, and five of the six Petitioning Creditors failing to hold direct recourse claims against the Alleged Debtor, the Petitioning Creditors filed the Involuntary Petition and initiated this proceeding (the "<u>Involuntary Proceeding</u>") before this Court on May 24, 2021.[8]

## RELIEF REQUESTED

32.    By this Motion, the Alleged Debtor seeks entry of an order pursuant to Bankruptcy Rule 1011, Civil Rule 12(b)(6), and Sections 303 and 305 of the Bankruptcy Code,

---

[8] While not directly relevant to this Motion, the Alleged Debtor believes that it has additional *bona fide* disputes concerning the liability and/or amount with respect to the Petitioning Creditors' asserted claims and liens.

substantially in the form of the Proposed Order, dismissing this case and the Involuntary Petition or, in the alternative, abstaining from entry of an order for relief on the Involuntary Petition and dismissing this case.

## BASIS FOR RELIEF REQUESTED

I.    **THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE THE PETITIONING CREDITORS DO NOT HOLD QUALIFYING CLAIMS AS REQUIRED BY SECTION 303(b).**

33.    Section 303(b) of the Bankruptcy Code contains three prerequisites for commencing an involuntary case against a debtor that has more than 12 creditors: (1) there must be three or more petitioning creditors; (2) each petitioning creditor must hold a claim against the debtor that is not contingent as to liability or the subject of a *bona fide* dispute as to liability or amount; and (3) their qualified claims must, in the aggregate, be in an unsecured amount of at least $16,750. *See* 11 U.S.C. § 303(b).[9]  A court must dismiss the petition if these requirements are not met.  *See In re Luxeyard, Inc.*, 2017 Bankr. LEXIS 3747, at *7 (Bankr. D. Del. Oct. 24, 2017). The burden of proof to establish standing under Section 303(b) rests with the petitioning creditors. *See*, *e.g.*, *In re AMC Investors, LLC*, 406 B.R.478, 484 (Bankr. Del. 2009).

34.    In contravention to Section 303(b)'s requirement that at least three petitioning creditors hold qualifying claims, as discussed in detail below, none of the Petitioning Creditors' claims satisfy those qualification requirements.  Therefore, the Involuntary Petition was initiated without the requisite number of eligible creditors and must be dismissed.

---

[9] Section 303(b)(1) provides:
> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title— (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $16,750  more than the value of any lien on property of the debtor securing such claims held by the holders of such claims . . . .

#117023999 v7

a.   PNA, CR Realty, Trade Off, S&E, and ILA Do Not Have Standing Under Section 303(b).

(1)   *The Mechanics' Liens Do Not Constitute Claims Against the Alleged Debtor for the Purposes of Section 303(b).*

35.   To satisfy Section 303(b) of the Bankruptcy Code, a petitioning creditor must hold a claim "against such ***person***"—*i.e.*, the actual person or entity that is the subject of the involuntary petition.  *See* 11 U.S.C. § 303(b) (emphasis added).  Simply stated, the alleged debtor must be personally liable on the claim.  *See Taberna Preferred Funding IV, Ltd. v. Opportunities II Ltd. (In re Taberna Preferred Funding IV, Ltd.)*, 594 B.R. 576, 594–95 (Bankr. S.D.N.Y. 2018); *CC Britain Equities, L.L.C. v. Allen-Main Assocs. (In re Allen-Main II)*, 223 B.R. 59, 61–62 (B.A.P. 2d Cir. 1998) (finding that a non-recourse creditor failed to meet the eligibility requirements of Section 303(b) in an involuntary chapter 7 case because it held a claim against the target debtor's property, rather than the target debtor itself); *In re Green*, 2007 Bankr. LEXIS 1296, *16 (Bankr. W.D. Tex. April 9, 2007) (finding that, in order to be counted under Section 303(b), a creditor must hold a claim against the person—meaning that the alleged debtor must be ***personally liable*** for the creditor's claim).

36.   Here, PNA, CR Realty, Trade Off, S&E, and ILA hold mechanics' liens, which expressly grant them secured, non-recourse claims against the ***Project***, not the Alleged Debtor.  As these claims are non-recourse, they can only be satisfied from the Project.  The Alleged Debtor is not personally liable for any deficiency.  Thus, these claims do not satisfy Section 303(b) because they are not claims against the "person" and cannot be relied upon by PNA, CR Realty, Trade Off, S&E, or ILA to commence this Involuntary Proceeding.

37.   Contrary to the Petitioning Creditors' Declarations, Section 102(2) of the Bankruptcy Code does not change this outcome.  In *Taberna*, the bankruptcy court considered and

12

rejected this exact argument when it was raised by non-recourse, secured noteholders. *See generally* 594 B.R. 576 (Bankr. S.D.N.Y. 2018). There, the noteholders argued that their non-recourse, secured claims were claims against the alleged debtor, individually, because Section 102(2) defines a "claim against the debtor" to include a claim against the property of the debtor. *See id*. at 587–88. The bankruptcy court, however, rejected this argument noting that Section 303(b) of the Bankruptcy Code does not use the word "debtor;" to the contrary, it says claim "'against such ***person*'** – i.e. the actual person or entity that is the subject of the involuntary petition." *Id.* at 594–95 (emphasis added); *see also* 11 U.S.C. § 303(b). The bankruptcy court explained further that "person" carries its own definition under the Bankruptcy Code (separate from "debtor") in Section 101(41) and is defined to include an individual, partnership, and corporation or, under certain circumstances, a government. *See id.* at 595; *see also* 11 U.S.C. § 101(41). Unlike Section 102(2), the definition of "person" does not include such person's property. *See id.* Thus, the bankruptcy court in a well-reasoned opinion concluded that the plain language of Sections 303(b), 101(41), and 102(2) of the Bankruptcy Code make clear that the phrase "claim against such person" does not include a claim against such person's property. *See id.* Therefore, a claim against an alleged debtor's property alone does not satisfy Section 303(b) and cannot be used to support an involuntary petition. *See id.*; *see also Allen-Main.* 223 B.R. at 61–62.

38.    Moreover, waiving a portion of a non-recourse claim secured by an alleged debtor's property in order to manufacture an unsecured claim against the alleged debtor, individually (as PNA and S&E purport to do with respect to their mechanics' liens), does not change the nature of the underlying claim from a non-recourse to recourse claim for the purposes of initiating an involuntary chapter 7 proceeding. This very issue was addressed in *Allen-Main*,

where the sole petitioning creditor (the holder of a non-recourse, secured claim against the target debtor's ***property***) initiated an involuntary chapter 7 proceeding and then attempted to waive a portion of its security interest in order to satisfy Section 303(b)'s unsecured debt requirement. *See* 218 B.R. 278, 278–79 (Bankr. D. Conn. 1998). Addressing the effect of the waiver, the bankruptcy court found that "[w]ithout personal liability, there can be no unsecured claim. To the extent that [this petitioning creditor] is undersecured or waives part of its secured claim against the alleged debtor, ***its secured claim is simply diminished rather than replaced by an unsecured claim***." *Id.* at 280 (emphasis added). On appeal, the Appellate Panel for the Second Circuit affirmed, finding that, "with respect to a nonrecourse creditor in a chapter 7 case, the creditor's only claim … is limited to the value of its collateral; there is no right to recover payment on any deficiency." 223 B.R. 59, 62 (B.A.P. 2d Cir. 1998).

39.      Therefore, the mechanics' liens held by PNA, CR Realty, Trade Off, S&E, and ILA are not qualified claims under Section 303(b) of the Bankruptcy Code and do not provide these Petitioning Creditors with standing to file the Involuntary Petition.

(2)      *The Petitioning Creditors Are Not Third-Party Beneficiaries Under the BFA, But, To the Extent They Are, Their Claims Are the Subject of a Bona Fide Dispute.*

40.      Under New York law, "[a] third-party may sue as a beneficiary on a contract ***made for [its] benefit***." *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (N.Y. 2018) (quotation omitted) (emphasis added). To establish a third-party beneficiary claim, a party must prove: "(1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for its benefit; and (3) that the benefit to it is sufficiently immediate … to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011)

14

(quotation omitted).  The failure to prove one or more of these elements renders the plaintiff nothing more than an incidental beneficiary of the contract.  *See id*.

41.    When examining contracts related to construction projects, such as the BFA, courts within the First Judicial Department[10] require express contractual language stating that the contracting parties intended to benefit a third-party by permitting that third-party to "enforce [a promisee's] contract with another."  *Dormitory Auth. v. Samson Constr. Co*., 30 N.Y.3d at 710.  In the absence of such express language, the third-party is typically considered an incidental beneficiary.  *See id*.  "This rule reflects the particular nature of construction contracts and the fact that … there are often several contracts between various entities, with performance ultimately benefitting all entities involved." *Id*.; *cf. id.* (recognizing that the court previously found third-party beneficiary status in two situations: when the third-party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was an "intent to permit enforcement by the third party.").

42.    Here, PNA, CR Realty, Trade Off, S&E, and ILA assert alleged third-party beneficiary claims under the BFA.  In support of this position, they cite solely to sections 8.2, 13.1(e), and 13.1(ee) of the BFA—again, an agreement they are not party to with the Alleged Debtor.  These sections (and the BFA in its entirety), however, do not expressly provide the Petitioning Creditors with any right of enforcement under the BFA nor do they evidence an intent on the part of its signatories to grant the Petitioning Creditors such a right.  *See* BFA §§ 8.2, 13.1(e), and 13.1(ee); Petitioning Creditors' Declarations, Ex. 1–3, 5 and 6.

---

[10] The New York Actions are pending in the Supreme Court of New York County, which is located within New York's First Judicial Department.

43.     Section 8.2 of the BFA is titled "Budget Line Items," and it permits the Mortgage Lenders to make payments on Budget Line Items in the event of a default.  *See* BFA § 8.2.  This section contains no mention of subcontractors or mechanics' lien holders nor does it address the rights of any party other than the Mortgage Lenders and the Alleged Debtor.  *See id.*

44.     Section 13.1(ee) is equally unsupportive; this section is titled "Hold Transaction Proceeds in Trust," and it makes no reference to subcontractors or mechanics' liens holders and provides no right of enforcement to a third-party.  *See id.* § 13.1(ee).

45.     Section 13.1(e) is the only section referenced by the Petitioning Creditors that addresses mechanics' liens and subcontractors, but any analysis of this section reveals that it also fails to support the Petitioning Creditors' position.  *See id.* § 13.1(e).  Like the others, this section does not grant the Petitioning Creditors any right to (i) enforce payment obligations; (ii) assert rights of other parties under the BFA; or (iii) initiate any action under the BFA directly against the Alleged Debtor.  *See id.*

46.     In the absence of express language granting the Petitioning Creditors an enforcement right with respect to the BFA, the BFA's mere mention of subcontractors and mechanics' lien holders is not sufficient to establish rights as third-party beneficiaries.  *Cf. MLB Const. Services, LLC v. Lake Ave. Plaza, LLC*, No. 2015781, 2015 WL 13681324, at *1 (N.Y. Sup. Ct. Nov. 17, 2015) (noting that, while the plaintiff was mentioned in the underlying agreement, it was not in privity with the contract and the language concerning payments to plaintiff were referenced in terms of protecting the actual contracting parties' interests, not that of the third party plaintiff).[11]

---

[11] Finally, it is worth noting PNA, CR Realty, Trade Off, and S&E's involvement with the Project arose after the execution of the BFA and ILA's involvement predates the BFA by approximately three years, so it is clear that they could not be intended third-party beneficiaries of the BFA.  *See* Petitioning Creditors' Declarations, Ex. 1–3, 5.

47.     Nevertheless, even if the Petitioning Creditors hold third-party beneficiary claims under the BFA (which they do not), such claims are the subject of a *bona fide* dispute. A petitioning creditor cannot hold a claim that is "the subject of a *bona fide* dispute as to liability or amount." 11 U.S.C. § 303(b). "If there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts," then the petition must be dismissed. *B.D.W. Assocs. Inc. v. Busy Beaver Bldg. Ctrs., Inc*., 865 F.2d 65, 66 (3d Cir.1989) (noting that if a *bona fide* dispute exists the court is obligated to dismiss the petition, rather than resolve the dispute).

48.     The existence of affirmative defenses may suggest that *bona fide* disputes exist, *In re AMC Investors, LLC,* 406 B.R. at 484, and pending litigation ***strongly suggests*** the existence of *bona fide* disputes, *In re Metrogate, LLC*, 2016 Bankr. LEXIS 2242, at *26 (Bankr. D. Del. May 26, 2016) (finding an intrusion into state court unwarranted where the transactions and claims at issue in the involuntary bankruptcy proceeding were also the subject of pending state court actions that were being "energetically" litigated).

49.     Here, all of the parties to this Involuntary Proceeding are engaged in at least one of the New York Actions, and the New York Actions are being actively litigated. The New York Actions also involve the same claims at issue in the Involuntary Proceeding. Importantly, any third-party beneficiary claim held by the Petitioning Creditors (which they do not hold) is tainted because it is dependent upon the claims being asserted by the Mortgage Lenders in the Foreclosure Action. Such claims are vigorously contested by the Alleged Debtor, as it continuously maintains that the Mortgage Lenders (not the Alleged Debtor) are in breach of the BFA. And, if that is not enough, the Petitioning Creditors readily admit that these issues are "substantially disputed." Petitioning Creditors' Declarations, Ex. 1-3, 5 and 6.

17

50.     Thus, the asserted third-party beneficiary claims (even if they existed) cannot satisfy Section 303(b) of the Bankruptcy Code because they are the subject of a *bona fide* dispute—meaning that PNA, CR Realty, Trade Off, S&E, and ILA do not hold qualified claims under Section 303(b) and, consequently, they do not have standing to file the Involuntary Petition.

b.     PNA Does Not Have Standing Under Section 303(b) Based on its Alleged Contract Claim.

51.     In addition to its mechanics' lien (and its purported waiver of a portion thereof) and alleged third-party beneficiary claim under the BFA, PNA also asserts standing based on an alleged contract claim.  The mechanics' lien and the alleged third-party beneficiary claim do not satisfy Section 303(b) of the Bankruptcy Code, as established *supra*.  The alleged contract claim also does not satisfy Section 303(b) because it is subject to a *bona fide* dispute and contingent.

52.     PNA bases its alleged contract claim on the Gilbane Letter and seeks expenses incurred in storing various construction materials belonging to the Alleged Debtor.  *See* Petitioning Creditors' Declarations, Ex. 1.  PNA alleges that the Alleged Debtor "instructed Gilbane, as its agent, to direct PNA to continue to store, and move if [Alleged Debtor] so requested" certain materials, "at [Alleged Debtor's] cost."  *Id.*

53.     The Alleged Debtor disputes its liability on this claim for several reasons, most critically being that the Gilbane Letter does not constitute a contract between the Alleged Debtor and PNA.  Contrary to PNA's misrepresentation, the Gilbane Letter states: "[Alleged Debtor] directs ***Gilbane*** to take appropriate action to immediately secure the Work being stored at PNA's facility and ***move*** such Work to a storage facility to be selected by [Alleged Debtor], at its costs."  Alleged Debtor's Declaration, Ex. 2*.* (emphasis added).

18

54.     Based on the express language of the Gilbane letter, the Alleged Debtor is not liable to PNA for this claim.  The Gilbane Letter contains no directive or instructions for PNA and no agreement to pay the selected storage facility for storage costs at any definitive time.  *See* Alleged Debtor's Declaration, Ex. 2.  The Alleged Debtor does not authorize Gilbane to act as its "agent" so that Gilbane can "direct PNA" to take any action.  To the contrary, the Alleged Debtor expressly directs **Gilbane** to take the actions necessary to remove the materials from PNA's possession and place them elsewhere.  PNA provides no evidence showing that the Alleged Debtor consented to its materials remaining at PNA's storage facilities, that the Alleged Debtor instructed PNA to take any action with respect thereto, or that the Alleged Debtor intended to contract with PNA for such services.  Thus, PNA's contract claim against the Alleged Debtor is non-existent or, at the very least, highly disputed by the Alleged Debtor.

55.     Moreover, the Gilbane Letter does not provide for when the Alleged Debtor will reimburse Gilbane (not PNA) for incurred storage costs.  Thus, any claim against the Alleged Debtor for payment thereof is contingent because it is not presently due and payable.  Consequently, PNA's final asserted claim does not qualify under Section 303(b), and, therefore, PNA does not have standing to file the Involuntary Petition.

c.     Domani Does Not Have Standing Under Section 303(b).

56.     Domani's claim underlying the Involuntary Petition is related to its breach of contract claim pending against the Alleged Debtor in the Domani Action.  Domani's claim, however, is disputed by the Alleged Debtor and, therefore, is subject to a *bona fide* dispute, disqualifying Domani from being a qualified petitioning creditor under Section 303(b) of the Bankruptcy Code.  Domani falsely testifies that the Alleged Debtor has made no challenges to Domani's claim.  *See* Petitioning Creditors' Declarations, Ex. 4.  Domani's declaration, however,

19

disregards the Alleged Debtor's *Answer* filed in the Domani Action, which does exactly that.  *See* Alleged Debtor's Declaration, Ex. 1.  Importantly, the Alleged Debtor maintains therein that Domani failed to, among other things, perform both the services required under the Domani Agreement generally and, with respect to services Domani actually did perform, at a level in compliance with the Domani Agreement's terms.  These genuine issues of material fact pertaining to Domani's performance under the Domani Agreement render its claim subject to a *bona fide* dispute as to both liability and amount.  *See* ¶ 20, *supra*, for the other arguments raised by the Alleged Debtor against Domani's claim.

57.    This claim is clearly subject to a *bona fide* dispute, and Domani, therefore, does not hold a qualified claim under Section 303(b) and lacks standing to file the Involuntary Petition.

## II.    THE INVOLUNTARY PETITION SHOULD BE DISMISSED BECAUSE IT WAS FILED FOR AN IMPROPER PURPOSE AND IN BAD FAITH.

### A.    The Filing of the Involuntary Petition Serves No Bankruptcy Purpose.

58.    The filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor and, thus, should be carefully scrutinized by courts so as to avoid injustice.  *See In re Forever Green Athletic Fields, Inc*., 804 F.3d 328, 335 (3rd Cir. 2015) (noting that courts "should be wary of creditors who may find alluring the 'retributive quality' of thrusting the debtor in bankruptcy."); *In re DSC, Ltd*., 387 B.R. 174, 178 (Bankr. E.D. Mich. 2008) (the filing of an involuntary should be a measure of last resort).  The central policy behind an involuntary bankruptcy is to protect against the threatened depletion of assets or to protect against the preferential treatment of other creditors.  *See In re Forever Green Athletic Fields, Inc*., 804 F.3d at 335; *In re Meltzer*, 516 B.R. 504 (Bankr. N.D. Ill. 2014).

59.    Here, the Involuntary Petition serves no legitimate bankruptcy purpose. The Petitioning Creditors do not raise allegations that the Alleged Debtor's assets (*i.e.*, the Project) are in threat of being depleted.  Indeed, they cannot make this assertion because the Receiver appointed by the NY Supreme Court continues to possess, protect, and maintain the Project.  Nor do the Petitioning Creditors raise concerns regarding preferential treatment of creditors at their expense.  *Cf. In re Luxeyard, Inc.*, 556 B.R. 627 (Bankr. D. Del. 2016) (finding involuntary proceeding is proper if necessary to assure equal distribution among creditors).  To the contrary, the Petitioning Creditors candidly admit that they filed the Involuntary Petition because they were dissatisfied with the progress being made in the New York Actions and the potential delay of receiving payment on their alleged claims.  *See* Petitioning Creditors' Declarations, Ex. 1 n.3.[12] Thus, it is clear that the Petitioning Creditors filed the Involuntary Petition solely for their own benefit in an attempt to force payment on their claims and as a litigation tactic to improve their positions in the pending New York Actions.  Courts routinely find that filing an involuntary petition for these reasons is sufficient grounds for dismissal.  *Cf. In re Tichy Elec. Co. Inc.*, 332 B.R. 364, 376 (Bankr. N.D. Iowa 2005) (finding the power of an involuntary bankruptcy petition must be exercised for good of entire creditor body and for legitimate bankruptcy purposes); *Forever Green*, 804 F.3d at 336–37 (citing cases dismissing involuntary petitions used as a debt collection device); *In re Metrogate, LLC*, 2016 Bankr. LEXIS 2242, at *39 (finding that petitioning creditors who initiate involuntary proceedings as a litigation tactic in another action act in bad faith).  In light of the Petitioning Creditors' improper purpose for filing the Involuntary Petition, this case should be dismissed.

---

[12] The Petitioning Creditors ultimately seek to bypass the NY Supreme Court and effectuate an expedited "foreclosure auction and sale of the [Project]…."  Petitioning Creditors' Declarations, Ex. 1 n.3.

### B.     The Involuntary Petition Was Filed in Bad Faith.

60.     In the Third Circuit, a finding of bad faith provides a basis for dismissal of an involuntary proceeding, ***even where*** the statutory requirements of Section 303(b) of the Bankruptcy Code have been satisfied.  *See Forever Green*, 804 F.3d at 333; *cf. id.* at 336 (listing petitioning creditors' failure to satisfy Section 303(b) as indicia of bad faith).  The alleged debtor bears the burden of proving bad faith by a preponderance of the evidence.  *See id.*  Other courts have found petitioning creditors to act in bad faith when such creditors file involuntary petitions as a litigation tactic in pending proceedings, as well as when involuntary petitions are filed as a way to forum shop.  *See In re Metrogate, LLC*, 2016 Bankr. LEXIS 2242, at *39.

61.     Courts utilize the "totality of the circumstances" test for evaluating whether an involuntary petition was filed in bad faith.  *See Forever Green*, 804 F.3d at 336.  This test looks to both subjective and objective evidence of bad faith.  *See id.*  In making this determination, courts consider a non-exhaustive list of factors, including whether:

> (1) the creditors satisfied the statutory criteria for filing the petition;
>
> (2) the involuntary petition was meritorious and/or the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing;
>
> (3) there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets;
>
> (4) the filing was motivated by ill will or a desire to harass;
>
> (5) the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;
>
> (6) the filing was used as a tactical advantage in pending actions;
>
> (7) the filing was used as a debt-collection mechanism; and
>
> (8) the filing had suspicious timing.

*Id.*

22

62.    Here, several indicia of bad faith are present.  First, the Petitioning Creditors fail to satisfy the requirements of Section 303(b) and (based on the unsoundness of their arguments) likely failed to conduct a reasonable inquiry regarding their eligibility to file the Involuntary Petition.  Moreover, two of the Petitioning Creditors attempted to alter the nature of their claims in an attempt to manufacture compliance with Section 303(b).  Second, the Petitioning Creditors provide no evidence (as there is none) of preferential payments to certain other creditors nor of dissipation of the Alleged Debtor's assets.  Third, the Petitioning Creditors initiated this Involuntary Proceeding for no valid bankruptcy purpose.   The Petitioning Creditors' dissatisfaction with the progress of the New York Actions, or their desire for an expedited foreclosure sale, is not a legitimate reason to file an involuntary proceeding.  Rather, this dissatisfaction evidences the Petitioning Creditors' true intent, which is to force payment on their alleged claims and alter their respective positions in the pending New York Actions and with respect to other creditors.[13]    Fourth, as noted *supra*, at least two of the Petitioning Creditors' Declarations are misleading to the Court with respect to the content of relevant documents and pleadings in the pending New York Actions.  Fifth, the timing is suspicious as: (i) the Involuntary Petition was filed while a Receiver is in place preventing any diminution in value of the Project; and (ii) the NY Supreme Court is considering the various motions pending before it, such as the Mortgage Lenders' *Motion for Partial Summary Judgment* filed against both Alleged Debtor and the Petitioning Creditors and the Alleged Debtor's *Motion to Dismiss Complaint*.  Lastly, the Petitioning Creditors are forum shopping by initiating the Involuntary Petition in a forum to which

---

[13] It is also highly suspicious that three of the six Petitioning Creditors' Declarations are signed by Matthew Caruso. *See* Petitioning Creditors' Declarations, Ex. 2–4.  Thus, there are likely fewer ***actual*** parties-in-interest in this Involuntary Proceeding than the six Petitioning Creditors.

23

the parties have a tenuous connection rather than where all of the parties are headquartered, conduct their respective businesses, the Project is located and the New York Actions are pending.

## III.   THIS COURT SHOULD ABSTAIN PURSUANT TO SECTION 305 OF THE BANKRUPTCY CODE.

63.     Section 305(a)(1) of the Bankruptcy Code provides that: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1); *see* 2 COLLIER ON BANKRUPTCY ¶ 305.01 ("[S]ection 305 of the Bankruptcy Code grants significant discretion to the bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction over a case filed under title 11."). Section 305 is often applicable in the involuntary context where petitioners fail to contemplate whether a bankruptcy serves the best interests of all creditors. *See In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008) (noting that case law on Section 305(a) was "dominated" by involuntary cases); *In re Caucus Distribs., Inc.*, 106 B.R. 890, 929–30 (Bankr. E.D. Va. 1989) ("[O]ne of the factors a court must consider when presiding over a contested involuntary petition is whether the administration of an estate in bankruptcy would be beneficial to creditors other than the petitioners.  A petitioner would do well to consider this question *prior* to the filing of an involuntary petition to avoid dismissal under Section 305 . . . .") (emphasis in original).

64.     Courts routinely apply a seven-factor test to determine whether dismissal or abstention under Section 305 is proper:

(1)     the economy and efficiency of administration;

(2)     whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3)     whether federal proceedings are necessary to reach a just and equitable solution;

(4)   whether there is an alternative means of achieving an equitable distribution of assets;

(5)   whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6)   whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7)   the purpose for which bankruptcy jurisdiction has been sought.

*In re AMC Investors, LLC*, 406 B.R. at 488; *see also In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 233–34 (Bankr. D. Del. 2015) (same).  Although each factor is considered, not all factors are weighed equally in each case "nor should the Court conduct a strict balancing." *Id*.  Ultimately, "[t]he decision to abstain under § 305(a)(1) should be made on a case by-case basis[,]" *Monitor*, 381 B.R. at 464, and guided by "the overall best interests of the creditors and debtor."  *AMC*, 406 B.R. at 488.

65.   In addition to the seven factors above, courts have found relief under Section 305 warranted in an absence of a true bankruptcy purpose.  *See In re Tichy Elec. Co.*, 332 B.R. at 376–77.  When those purposes will not be served, courts dismiss cases pursuant to Section 305.  *See In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 87 (Bankr. N.D. Ill. 2006) ("A bankruptcy case filed or maintained purely for some party's procedural ends, one having no purpose cognizable under the bankruptcy laws, should be dismissed under section 305(a)(1).").  Courts have also recognized that abstention under Section 305 of the Bankruptcy Code is warranted when a petitioning creditor files an involuntary petition to obtain a disproportionate advantage.  *See*, *e.g.*, *In re Spade*, 258 B.R. 221, 232–33 (Bankr. D. Colo. 2001), *aff'd*, 269 B.R. 225 (D. Colo. 2001) (holding that the "Petitioning Creditors did not file the petition in order to commence an orderly and fair distribution of [the debtor's] assets to all of [the debtor's] creditors"

25

and that motivation was petitioning creditors' desire to gain an advantage over other parties); *In re Tichy Elec.*, 332 B.R. at 376–77 (petitioning creditors invoked bankruptcy for improper purpose after non-bankruptcy options were slow and results unsatisfactory).

66.     For all of the reasons discussed *supra*, this Court should abstain because the Involuntary Proceeding was not commenced by the Petitioning Creditors in good faith or for a legitimate bankruptcy purpose. Rather the Petitioning Creditors, growing frustrated with the pending New York Actions, were motivated by their own self-interest to commence this Involuntary Proceeding and change forums as a litigation tactic, to the detriment of the Alleged Debtor, its other creditors, and judicial economy. While an analysis of the abstention factors does not require a strict balancing, the number and weight of the factors in this case also weigh heavily in favor of this Court abstaining from, and dismissing, the Involuntary Proceeding.

67.     As detailed in section II *supra*, the Petitioning Creditors filed the Involuntary Petition for an improper purpose as a collection device and litigation tactic. *See Tichy Elec.*, 332 B.R. at 376–77 ("[An involuntary petition] is not intended to be used in an exclusively self-serving manner as a collection device. Even a cursory consideration of this process would reveal that the use of this option to collect individual debt is completely disproportionate to the consequences of such action."). This Court should abstain and dismiss the Involuntary Petition because it was clearly filed as a way to advance the Petitioning Creditors' interests only and not for the best interests of all creditors of the Alleged Debtor. Further evidence of the Petitioning Creditors' placing their own self-interest above the best interest of the Alleged Debtor and its creditors is also demonstrated by the fact that the Receiver is in place to protect the Project, the Alleged Debtor, and related creditors. This Involuntary Proceeding in no way benefits other creditors.

#117023999 v7

68.     There is another forum already available to protect the interests of the Petitioning Creditors and Alleged Debtor as a result of the already pending Foreclosure Action and Domani Action.   "Bankruptcy courts have also ruled in favor of abstention when the parties have access to a state court forum that has greater expertise than a bankruptcy court on the key issues impacting the bankruptcy case."  *Efron v. Candelario (In re Efron)*, 529 B.R. 396, 406 (B.A.P 1st Cir. 2015).   In the Foreclosure Action, the key issues of the disputed amounts between the Alleged Debtor and the Mortgage Lenders relate to the BFA under which five of the Petitioning Creditors assert third-party beneficiary claims, and the mechanic's liens of five of the six Petitioning Creditors.   Domani's breach of contract claims have likewise been asserted in the Domani Action.  All of the Petitioning Creditors are involved in either the Foreclosure Action or Domani Action and have the ability to protect and preserve their potential claims, which claims the Alleged Debtor has already asserted and briefed defenses to in those actions.  The Petitioning Creditors should not be able to utilize the drastic remedy of placing the Alleged Debtor in an involuntary bankruptcy simply because they are not satisfied with the pace of the New York Actions.  Such a remedy is not necessary to reach a just and equitable solution.

69.     Additionally, the "economy and efficiency of administration" are best served by abstention and dismissal.  The Petitioning Creditors' rights against the Alleged Debtor are already at issue in either the Foreclosure Action or Domani Action and protected by the Receiver.   Thus, a bankruptcy would merely add an unnecessary layer of expense and administrative burden on the Alleged Debtor.  *See ProFutures Special Equity Fund, L.P. v. Spade (In re Spade)*, 269 B.R. 225, 229 (D. Colo. 2001) (noting that bankruptcy court found that "allowing the case to remain would be inefficient and costly because the estate would be responsible for funding the trustee and any bankruptcy counsel hired by the trustee . . .").

27

70.     The parties' only connection to Delaware is that the Alleged Debtor is a Delaware limited liability company.  The majority of the parties, all of the pending New York Actions, and the Alleged Debtor's assets and principal place of business are located in New York, the relevant underlying contracts are all governed by Sharia and New York law, and the NY Supreme Court has already begun to handle substantive matters in the New York Actions.  Thus, in addition to the pending New York Actions being an adequate forum to address the Petitioning Creditor's claims, the Alleged Debtor respectfully asserts that Delaware is not the proper forum or venue for these disputes between the Alleged Debtor and the Petitioning Creditors (and the Alleged Debtor reserves all of its rights in connection with the ability to seek to transfer venue if needed).

71.     Lastly, the Alleged Debtor believes that a single asset real estate bankruptcy is not in the best interests of the Alleged Debtor and all of its creditors.

72.     For these reasons, abstention and dismissal of this Involuntary Petition would serve the best interests of the Alleged Debtor and its creditors.  A bankruptcy would not create any benefits or remedy any harms justifying the cost to the Alleged Debtor, and the Petitioning Creditors will suffer no prejudice from proceeding in a non-bankruptcy forum.

## IV.     THE ALLEGED DEBTOR SHOULD BE AWARDED ITS FEES, COSTS, AND DAMAGES UNDER SECTION 303(i).

73.     Where a court dismisses an involuntary petition, other than by consent of all petitioners and the alleged debtor, the court may award the alleged debtor its costs and reasonable attorneys' fees incurred in connection with responding to the petition.  *See* 11 U.S.C. § 303(i)(1); *see generally In re Rosenberg*, 779 F.3d 1254 (11th Cir. 2015).  Where the involuntary petition has been filed in bad faith, the court may award damages and punitive damages.  *See id.* § 303(i)(2).  The court may award costs and fees to the putative debtor under Section 303(i) even if

28

the dismissal was under abstention principles.  *See In re Diloreto*, 388 B.R. 637 (Bankr. E.D. Pa. 2008); *In re Macke Intern. Trade, Inc.*, 370 B.R. 236 (B.A.P. 9th Cir. 2007).

74.     There is a presumption that costs and attorneys' fees will be awarded to a putative debtor where an involuntary petition is dismissed.  *See In re Express Car Truk & Rental, Inc.*, 440 B.R. 422, 431–32 (Bankr. E.D. Pa. 2010).  Once an involuntary petition is dismissed, the petitioning creditor bears the burden of proof justifying a denial of costs and fees.  *See In re Ross*, 135 B.R. 230, 238 (Bankr. E.D. Pa. 1991) (finding the burden shifts to the petitioning creditors to present evidence to disallow an award of fees).

75.     Given the foregoing, it is respectfully requested that the Court enter judgment against the Petitioning Creditors and in favor of the Alleged Debtor for costs, reasonable attorneys' fees and, to the extent appropriate, proximate and/or punitive damages.

## NOTICE

76.     Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Petitioning Creditors; and (iii) all entities who filed a request for service of notices in this Involuntary Proceeding pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Alleged Debtor submits that no other or further notice of this Motion is necessary or required.

## CONCLUSION

77.     WHEREFORE, the Alleged Debtor respectfully requests the entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

*[Signature page follows]*

Dated:  July 6, 2021
      Wilmington Delaware

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ Marcy J. McLaughlin Smith*

Marcy J. McLaughlin Smith (DE 6184)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390
E-mail: marcy.smith@troutman.com

-and-

Gary W. Marsh (admitted *pro hac vice*)
600 Peachtree Street, NE
Suite 3000
Atlanta, GA 30308
Telephone:  (404) 885-2618
Facsimile:  (404) 962-6983
Email: gary.marsh@troutman.com

-and-

Brett D. Goodman (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-5966
Email: brett.goodman@troutman.com

*Counsel to Park Place Development Primary, LLC*

#117023999 v7