# EXHIBIT J

Declaration of Matthew Parrott

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------- X

MALAYAN BANKING BERHAD, NEW YORK
BRANCH, as Administrative Agent for MALAYAN
BANKING BERHAD, LONDON BRANCH, INTESA
SANPAOLO S.P.A., NEW YORK BRANCH,
WARBA BANK K.S.C.P., and 45 PARK PLACE
INVESTMENTS, LLC,

                         Plaintiff,

          - against -

PARK PLACE DEVELOPMENT PRIMARY LLC, PARK
PLACE PARTNERS DEVELOPMENT LLC, 45 PARK
PLACE PARTNERS, LLC, SOHO PROPERTIES
GENERAL PARTNER, LLC, SHARIF EL-GAMAL,
STATE OF NEW YORK CIVIL RECOVERIES BUREAU,
GILBANE RESIDENTIAL CONSTRUCTION LLC, US
CRANE & RIGGING LLC, CONSTRUCTION REALTY
SAFETY GROUP INC., TRADE OFF PLUS, LLC, ALL-
CITY METAL, INC., PERMASTEELISA NORTH
AMERICA CORP., TRANSCONTINENTAL STEEL
CORP., ISMAEL LEYVA ARCHITECT, P.C., PERI
FORMWORK SYSTEMS, INC., ULE GROUP CORP.
D/B/A UNITED LIGHTING ELECTRICAL CORP., S&E
BRIDGE & SCAFFOLD LLC, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD, NEW YORK
STATE DEPARTMENT OF TAXATION AND FINANCE,
and JOHN DOE "ONE" THROUGH "JOHN DOE
THIRTY", the identities of such "John Doe" defendants
being presently unknown, as more fully described in the
Fourth, Fifth, Sixth Cross-Claims alleged in the Verified
Answer of Permasteelisa North America Corp.,

                     Defendants.
-------------------------------------------------------------------------- X
PERMASTEELISA NORTH AMERICA CORP.,

    Defendant and Cross-Claim/Counterclaim Plaintiff,

        - against –

SOHO PROPERTIES INC.,

    Additional Defendant on Cross-Claims and Counterclaim.

-------------------------------------------------------------------------- X

**VERIFIED ANSWER OF
DEFENDANT
PERMASTEELISA NORTH
AMERICA CORP. TO
FIRST AMENDED
VERIFIED COMPLAINT,
WITH CROSS-CLAIMS
AND LIEN FORECLOSURE
COUNTERCLAIM**

Index No. 850083/2020

**PERMASTEELISA NORTH AMERICA CORP.** ("PNA"), by its undersigned attorneys, for its answer to the First Amended Verified Complaint dated July 14, 2020 ("the First Amended Verified Complaint"), respectfully alleges upon information and belief as follows:

1.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 1 through 6 of the First Amended Verified Complaint.

2.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 7 through 28, and 30 through 36 of the First Amended Verified Complaint.

3.    Denies the allegations contained in paragraph 29 of the First Amended Verified Complaint, except admits that PNA is a mechanic's lien creditor pursuant to the Corrected Lot 8 Notice of Lien hereinafter described, and respectfully incorporates paragraphs 84 through 90 hereof for an exact description thereof.

4.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the First Amended Verified Complaint, except admits that PNA performed construction work at real property which is the subject of this action and that PNA is subject to the personal jurisdiction of this Court.

5.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the First Amended Verified Complaint, except admits that the real property which is the subject of this action is situated in New York County.

2

6.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 39 through 148, 150 through 162, 164 through 169, and 171 through 198 of the First Amended Verified Complaint.

7.  Admits the allegations contained in paragraphs 149, 163, and 170 of the First Amended Verified Complaint.

### ANSWERING THE FIRST CAUSE OF ACTION

8.  With respect to paragraph 199 of the First Amended Verified Complaint, PNA repeats and realleges the allegations contained in paragraphs 1 through 7 hereof, with the same force and effect as though fully set forth at length herein.

9.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 200 through 202 of the First Amended Verified Complaint.

10.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 203 through 205 of the First Amended Verified Complaint, except avers that PNA claims to have an interest or lien upon the Mortgaged Property and denies that PNA's interest or lien is subordinate or inferior to the Lender's lien upon the Mortgaged Property.

11.  Neither admits nor denies the allegations contained in paragraphs 206 through 209 of the First Amended Verified Complaint, as such allegations are in the nature of legal contentions and reservations of rights which do not call for admission or denial.

12.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 210 through 213 and 215 of the First Amended Verified Complaint.

3

13.  Denies the allegations contained in paragraph 214 of the First Amended
Verified Complaint.



### ANSWERING THE SECOND CAUSE OF ACTION

14.  With respect to paragraph 216 of the First Amended Verified Complaint,
PNA repeats and realleges the allegations contained in paragraphs 1 through 7 and 9 through 13
hereof, with the same force and effect as though fully set forth at length herein.

15.  Denies having knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraphs 217 through 220 of the First Amended Verified
Complaint.

### ANSWERING THE THIRD CAUSE OF ACTION

16.  With respect to paragraph 221 of the First Amended Verified Complaint,
PNA repeats and realleges the allegations contained in paragraphs 1 through 7, 9 through 13, and
15 hereof, with the same force and effect as though fully set forth at length herein.

17.  Denies having knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraphs 222 through 228 of the First Amended Verified
Complaint.

18.  Denies the allegations contained in paragraph 229 of the First Amended
Verified Complaint.

### ANSWERING THE FOURTH CAUSE OF ACTION

19.  With respect to paragraph 230 of the First Amended Verified Complaint,
PNA repeats and realleges the allegations contained in paragraphs 1 through 7, 9 through 13, 15,
17, and 18 hereof, with the same force and effect as though fully set forth at length herein.

20.   Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 231 through 243 of the First Amended Verified Complaint.

## FIRST AFFIRMATIVE DEFENSE

21.   The First Amended Verified Complaint (and each "cause of action" alleged therein) fails to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

22.   PNA incorporates its claims asserted below (whether cross-claims or counterclaims) to the extent they provide affirmative defenses to any of the claims asserted by plaintiff in its First Amended Verified Complaint.

## THIRD AFFIRMATIVE DEFENSE

23.   The "Affidavit Pursuant to Section 22 of the Lien Law of the State of New York", sworn to on April 26, 2016 by Sharif El-Gamal on behalf of Park Place Development Primary LLC, was materially false on the date of filing in that it overstated the net sum available to the borrower for the improvement.

## FOURTH AFFIRMATIVE DEFENSE

24.   The "Affidavit Pursuant to Section 22 of the Lien Law of the State of New York", sworn to on April 26, 2016 by Sharif El-Gamal on behalf of Park Place Development Primary LLC, became materially false after the date of filing in that it overstated the net sum available to the borrower for the improvement, by virtue of loan proceeds being advanced under the building loan contract for costs other than "costs of improvement" as defined in Lien Law §2,

or otherwise contrary to the itemization set forth in such "Affidavit Pursuant to Section 22 of the Lien Law."

## FIFTH AFFIRMATIVE DEFENSE

25.    To the extent that the Building Facility Agreement defined in the First Amended Verified Complaint constitutes a "building loan contract" within the meaning of Lien Law §2(13), such agreement was substantially modified with respect to the net sum available to the borrower for the improvement, but such modification(s) were not filed with the County Clerk as required by Lien Law §22.

## SIXTH AFFIRMATIVE DEFENSE

26.    Plaintiff is equitably estopped against asserting priority over PNA's mechanic's lien because plaintiff ceased making installment payments to cover the cost of improvement, thereby causing PNA to be unpaid for its work.

## SEVENTH AFFIRMATIVE DEFENSE

27.    Any equitable relief asserted by plaintiff against PNA is precluded by the doctrine of unclean hands.

## CROSS-CLAIMS AND COUNTERCLAIM FOR LIEN FORECLOSURE

For its cross-claims against defendants GILBANE RESIDENTIAL CONSTRUCTION LLC, PARK PLACE DEVELOPMENT PRIMARY LLC, PARK PLACE PARTNERS DEVELOPMENT LLC, and SHARIF EL-GAMAL, and against SOHO PROPERTIES INC. (Additional Defendant on Cross-Claims), and for its counterclaim against plaintiff MALAYAN BANKING BERHAD, NEW YORK BRANCH, as Administrative Agent

6

Case 21-10849-CSS    Doc 38-10    Filed 07/08/21    Page 8 of 32

for MALAYAN BANKING BERHAD, LONDON BRANCH, INTESA SANPAOLO S.P.A.,

NEW YORK BRANCH, WARBA BANK K.S.C.P., and 45 PARK PLACE INVESTMENTS,

LLC, and against SOHO PROPERTIES INC. (Additional Defendant on Counterclaims), PNA

states and alleges as follows:

## THE PARTIES AND THE PROJECT

28.    Plaintiff Permasteelisa North America Corp. ("PNA") is a Delaware

corporation duly authorized to do business in the State of New York, having its principal place

of business at 123 Day Hill Road, Windsor, Connecticut 06095. PNA is an exterior wall

cladding manufacturer and installer.

29.    Upon information and belief, Malayan Banking Berhad is a corporation

organized under the laws of Malaysia, and plaintiff Malayan Banking Berhad, New York

Branch is authorized to do business in the State of New York and is also registered with and

supervised by the New York State Department of Financial Services.

30.    Upon information and belief, plaintiff is the administrative agent for the

"financiers" described in paragraphs 8 through 11 of the First Amended Verified Complaint.

31.    Upon information and belief, Malayan Banking Berhad, London Branch,

is a corporation organized under the laws of Malaysia, and is one of the financier parties under

the Facility Agreements alleged in the First Amended Verified Complaint.

32.    Upon information and belief, Intesa Sanpaolo S.P.A., New York Branch,

is a banking institution incorporated and existing under the laws of the Republic of Italy, and is

one of the financier parties under the Facility Agreements alleged in the First Amended

Verified Complaint.

7

FILED: NEW YORK COUNTY CLERK 08/03/2020 10:46 AM
NYSCEF DOC. NO. 176     Case 21-10849-CSS     Doc 38-10     Filed 07/08/21     Page 9 of 32

INDEX NO. 850083/2020
RECEIVED NYSCEF: 08/03/2020

33. Upon information and belief, Warba Bank K.S.C.P. is a corporation organized under the laws of the State of Kuwait, and is one of the financier parties under the Facility Agreements alleged in the First Amended Verified Complaint.

34. Upon information and belief, 45 Park Place Investments, LLC is a limited liability company organized under the laws of Delaware, and is one of the financier parties under the Facility Agreements alleged in the First Amended Verified Complaint.

35. Upon information and belief, defendant 45 Park Place Partners, LLC is a New York liability company having its office in New York County, State of New York.

36. Upon information and belief, defendant Soho Properties General Partner, LLC is a Delaware limited liability company which is registered with the New York Department of State in New York County, and maintains its principal office in New York County, State of New York.

37. Upon information and belief, defendant Gilbane Residential Construction LLC ("Gilbane") was and is a Delaware company having an address 88 Pine Street, New York, New York 10005. Gilbane is a general contracting and construction management company.

38. Upon information and belief, defendant Park Place Development Primary LLC ("Park Place Primary") was and is a Delaware company having an address at 31 West 27th Street, 9th Floor, New York, New York 10001.

39. Upon information and belief, defendant Park Place Partners Development LLC ("Park Place Partners") was and is a Delaware company having an address at 31 West 27th Street, 9th Floor, New York, New York 10001.

40.     Upon information and belief, additional defendant on cross-claims and counterclaim Soho Properties Inc. ("Soho Properties") was and is a New York corporation having an address at 31 West 27th Street, 9th Floor, New York, New York 10001.

41.     Upon information and belief, at all times hereinafter mentioned Park Place Primary, Park Place Partners, and Soho Properties were corporate affiliates and acted from time to time as authorized agents on behalf of each other.

42.     Upon information and belief, defendant Sharif El-Gamal ("El-Gamal") was at all times hereinafter mentioned an officer, principal, shareholder, or managing member of Park Place Primary, Park Place Partners, and/or Soho Properties, having a place of business at 31 West 27th Street, 9th Floor, New York, New York 10001.

43.     Upon information and belief, Park Place Primary is, and at all times hereinafter mentioned was, the owner of record and owner in fee simple of the real property upon which substantially all of PNA's work was performed, commonly known as 43 Park Place, located at 43 Park Place, New York, New York 10007, and designated on the tax map of New York County as Block 126, Lot 8 (hereinafter "Lot 8" or "the Residential Tower Real Property").

44.     Upon information and belief, Park Place Partners is, and at all times hereinafter mentioned was, the owner of record and owner in fee simple of real property commonly known as 45 Park Place, located at 45 Park Place, New York, New York 10007, and designated on the tax map of New York County as Block 126, Lot 9 (hereinafter "Lot 9" or "the Cultural Center Real Property").

45.     Upon information and belief, the residential tower project which is the subject of this action is sometimes described in project records as being located at 45 Park

9

Case 21-10849-CSS    Doc 38-10    Filed 07/08/21    Page 11 of 32

Place, New York, New York 10007, even though such residential tower project was actually performed at Lot 8 (43 Park Place) rather than Lot 9 (45 Park Place).

46.    Upon information and belief, Gilbane, as construction manager, and Park Place Partners, as owner, entered into a written Construction Management Agreement dated as of March 15, 2015 (the "CMA"), whereby Gilbane agreed to provide construction management services in connection with a project for construction of a residential condominium building upon real property located at Lot 8 but described in the CMA as "located at 45 Park Place, New York, New York" ("the Project"), as reflected in plans and specifications and other documents referenced therein. The CMA, including all drawings, specifications, addenda, and other contract documents comprising the Agreement and all subsequent changes and modifications thereto, is incorporated herein by reference as if set forth in its entirety herein, and PNA begs leave to refer to same upon the trial of this action for the exact terms thereof.

47.    By a written agreement dated September 30, 2016, PNA and Gilbane entered into a trade contract agreement ("the Trade Contract Agreement") under which PNA undertook to furnish labor, services, materials, and equipment for the installation of the curtainwall system and certain other work for the Project, upon real property located at Lot 8 but described in the Trade Contract Agreement as 45 Park Place, New York, New York, in connection with a "Project Name" described in the Trade Contract Agreement as "45 Park Place – 45 Park Place, New York, NY", in consideration of an aggregate contract price of $22,647,558.00 (exclusive of change orders), as reflected in plans and specifications and other documents referenced therein. The Trade Contract Agreement, including all drawings, specifications, addenda, and other contract documents comprising the Subcontract and all subsequent changes and modifications thereto, is incorporated herein by reference as if set forth

in its entirety herein, and PNA begs leave to refer to same upon the trial of this action for the exact terms thereof.

48.     Upon information and belief, the construction project described in the CMA and the Trade Contract Agreement involved construction work performed exclusively or primarily at the Residential Tower Real Property, with the knowledge and consent of Park Place Primary, Park Place Partners, Soho Properties, and/or El-Gamal.

49.     Throughout PNA's performance of the Trade Contract Agreement, Gilbane repeatedly failed and refused to make timely and complete payments to PNA; and PNA's work was materially impeded and obstructed by substantial interferences on the part of Gilbane and by extraordinary and unreasonable delays for which Gilbane is responsible, which reflected gross negligence and/or reckless indifference to PNA's rights and were not within the contemplation of the parties when the Trade Contract Agreement was entered into.

50.     Said interferences and delays resulted from wrongful acts and omissions of Gilbane and others for whom Gilbane is responsible, including the following:

a.     Failing to make timely payments to PNA and failure to properly budget for the Project and administer funds budgeted therefor;

b.     Requiring PNA and its subcontractors to perform as work required under the Trade Contract Agreement, work which was in fact extra and additional thereto and beyond the scope thereof;

c.     Failing to provide PNA and its subcontractors in a timely manner with necessary information, directions, decisions and changes;

d.     Failing to provide PNA and its subcontractors with reasonable, timely and unobstructed access to the work areas and opportunity to perform their work;

e.     Issuing excessive and unreasonable changes and stoppages to the work called for by the Trade Contract Agreement;

f.     Requiring and causing PNA to perform its work in an inefficient and uneconomical manner and under circumstances and conditions and at times and in sequences not contemplated by the Trade Contract Agreement;

11

g.     Failing to properly qualify other trade contractors upon whose timely and workmanlike work the timely and efficient work of PNA depended;

h.     Failing to properly supervise and coordinate the work of other trade contractors upon whose timely and workmanlike work the timely and efficient work of PNA depended, and allowing them to perform work contrary to the contract documents;

i.     Unduly delaying and protracting the retention of replacement trade contractors for trade contractors who defaulted in performing their work on which the timely and efficient work of PNA depended;

j.     Failing to acknowledge, review, process change orders for and pay for extra and additional work, and greatly extended storage costs, and greatly increases design and engineering assistance costs incurred by PNA solely due to the foregoing; and

k.     Otherwise administering the Trade Contract Agreement in a grossly negligent or bad faith manner, knowing that such actions would cause harm to PNA.

     51.     As a result of said breaches of the Trade Contract Agreement, interferences and delays, PNA was compelled, under protest, to perform its work in a costly, disorganized and inefficient manner, and at times and in ways not contemplated by the Trade Contract Agreement. Gilbane's failure to timely process change order requests for extensions of time and money, Gilbane's unreasonable and unanticipated delays and disruption of the work, and Gilbane's active interference, gross negligence, failure or lack of ability to pay for the work, and misrepresentation of the financial status of the Project also caused PNA to sustain and incur losses and increased costs in the performance of its work due to loss of productivity, design disruption, resequencing of procurement and production activities, escalation of labor rates, additional off-site storage, additional crating, extended general conditions and safety costs, and other damages.

     52.     On or about November 21, 2019, PNA sent Gilbane a termination notice letter reserving PNA's right to terminate the Trade Contract Agreement for cause, including but

not limited to Gilbane's failure to make timely payments in accordance with the Trade Contract Agreement.

53.    On or about December 6, 2019, Gilbane sent a letter to PNA stating (among other things) that the CMA was terminated for convenience effective no later than December 4, 2019, directing PNA to stop all work in connection with the Project, and requesting a "final invoice" from PNA.

54.    On or about December 6, 2019, Soho Properties, acting as a representative of Park Place Partners, sent a letter to PNA stating (among other things) that the CMA was terminated for convenience on December 4, 2019 and requesting a "final invoice" from PNA.

55.    On or about December 23, 2019, PNA sent Gilbane a letter stating (among other things) that PNA was terminating the Trade Contract Agreement for cause, including but not limited to Gilbane's failure to make timely payments in accordance with the Trade Contract Agreement.

**AS AND FOR A FIRST CROSS-CLAIM**
**(BREACH OF CONTRACT)**
(AGAINST GILBANE RESIDENTIAL CONSTRUCTION LLC)

56.    PNA repeats and realleges each allegation contained in paragraphs 21 through 55 hereof.

57.    The Trade Contract Agreement includes the following provisions (in Section 33.1.1 of the General Conditions):

> "If the Work is stopped for a period of thirty days under an order of any court or other public authority having jurisdiction, or as a result of an act of government, such as a declaration of a national emergency making materials unavailable, through no fault of the Trade Contractor or a Trade Subcontractor or their agents or employees or any other persons performing any of the Work under a contract with the Trade Contractor, or if the Work should be

13

FILED: NEW YORK COUNTY CLERK 08/03/2020 10:46 AM
NYSCEF DOC. NO. 176    Case 21-10849-CSS    Doc 38-10    Filed 07/08/21    Page 15 of 32

INDEX NO. 850083/2020
RECEIVED NYSCEF: 08/03/2020

stopped for a period of thirty days by the Trade Contractor because of a failure to receive payment in accordance with the Trade Contract Agreement, then the Trade Contractor may, upon seven additional days' written notice to the Construction Manager, terminate the Trade Contract Agreement and recover from the Owner or Construction Manager, as the case may be, payment for all Work executed and for any proven loss sustained upon any materials, equipment, tools, construction equipment and machinery, including reasonable profit and damages."

58.    The Trade Contract Agreement was at all relevant times a valid and enforceable contract between PNA and Gilbane.

59.    PNA has duly performed its part of the Trade Contract Agreement except as prevented from doing so by Gilbane and has complied with, or Gilbane is estopped to deny or has waived compliance by PNA with, all of the terms, provisions and conditions of the Trade Contract Agreement.

60.    Gilbane breached the Trade Contract Agreement by its failure and refusal to make timely and complete payments to PNA, and by its further and other acts and omissions set forth in paragraphs 41 through 43 above, which are realleged in this first cause of action.

61.    By reason of the foregoing, PNA has been damaged in the amount of $8,875,284.80, no part of which has been paid despite due demand therefor.

62.    An answer to the foregoing cross-claim is hereby demanded.

## AS AND FOR A SECOND CROSS-CLAIM
## IN THE ALTERNATIVE
## (BREACH OF CONTRACT)
(AGAINST GILBANE RESIDENTIAL CONSTRUCTION LLC)

63.    PNA repeats and realleges each allegation contained in paragraphs 21 through 55 and 57 through 61 hereof.

64.    Section 33.3.2 of the Trade Contract Agreement's General Conditions provides (among other things) that, in the event of a termination for convenience, Gilbane shall thereafter pay to the Trade Contractor the portion of the contract sum related to the work completed by the Trade Contractor immediately prior to the notice of termination, plus expenses "incurred or for which the Trade Contractor is liable as the result of termination by Trade Contractor of respective work orders, purchase orders or subcontracts related to the Notice of Termination including overhead and profit on completed work."

65.    In the event of a termination for convenience, Section 33.3.3 of the Trade Contract Agreement's General Conditions further provides:

> After receipt of a Notice of Termination, Trade Contractor shall submit to Construction Manager its written termination claim in the form and with the certification which the Construction Manager may require. Such claims shall be submitted promptly, but in no event more than forty-five (45) days after the effective date of termination.

66.    In accordance with the terms of Article 33 of the Trade Contract Agreement's General Conditions, PNA duly submitted its written termination claim in the amount of $8,875,284.80, including all required supporting documentation and detail, to Gilbane on January 20, 2020, forty-five (45) days after PNA first received notice of the purported termination for convenience and/or request for its termination claim.

67.    The Trade Contract Agreement was at all times prior to its breach by Gilbane a valid and enforceable contract between PNA and Gilbane.

68.    Gilbane has failed or refused to pay any of the amounts stated in PNA's written termination claim, in breach of the Trade Contract Agreement.

69.    By reason of the foregoing, PNA has been damaged in the amount of $8,875,284.80, no part of which has been paid despite due demand therefor.

15

70.    An answer to the foregoing cross-claim is hereby demanded.

**AS AND FOR A THIRD CROSS-CLAIM**
**IN THE ALTERNATIVE**
**(BREACH OF CONTRACT)**
(AGAINST GILBANE RESIDENTIAL CONSTRUCTION LLC;
PARK PLACE DEVELOPMENT PRIMARY LLC; PARK PLACE
PARTNERS DEVELOPMENT LLC; SOHO PROPERTIES INC.;
AND SHARIF EL-GAMAL)

71.    PNA repeats and realleges each allegation contained in paragraphs 21 through 55, 57 through 61, and 64 through 69 hereof.

72.    Upon information and belief, Gilbane, on one hand, and Park Place Primary, Park Place Partners, Soho Properties, and/or El-Gamal (the "Principal(s)"), on the other hand, mutually consented to an agency relationship consisting of Gilbane as agent, with actual and/or apparent authority, and the Principal(s) as principal(s), with respect to matters within the scope of the Project.

73.    Upon information and belief, the Principal(s) had a right to control, and in fact did control, Gilbane's actions with respect to the execution, performance, and termination of the Trade Contract Agreement with PNA.

74.    After termination of the CMA on December 4, 2019, Gilbane continued to act as agent of the Principal(s) with respect to PNA.

75.    On January 20, 2020, PNA submitted its final invoice to the Principal(s) in the amount of $8,875,284.80, supported by all required documentation and detail, none of which amount has been satisfied by the Principal(s).

76.    In view of the foregoing agency relationship and otherwise, the Principal(s) were required to make payment of PNA's final invoice but have failed to do so. .

16

Case 21-10849-CSS    Doc 38-10    Filed 07/08/21    Page 18 of 32

77.     By reason of the foregoing, PNA has been damaged in the amount of $8,875,284.80, no part of which has been paid despite due demand therefor.

78.     An answer to the foregoing cross-claim is hereby demanded.

### AS AND FOR A FOURTH CROSS-CLAIM AND FIRST COUNTERCLAIM
### (FORECLOSURE OF MECHANIC'S LIEN)
(AGAINST ALL PARTIES OTHER THAN PNA, INCLUDING "JOHN DOE ONE" THROUGH "JOHN DOE TEN")

79.     PNA repeats and realleges each allegation contained in paragraphs 21 through 55, 57 through 61, 64 through 69, and 72 through 77 hereof.

80.     Upon information and belief, plaintiff Malayan Banking Berhad, New York Branch ("Plaintiff" or "MBB New York"), as administrative agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, Warba Bank K.S.C.P., and 45 Park Place Investments, LLC, was and is a corporation organized under the laws of Malaysia having an address at 400 Park Avenue, New York, New York 10022.

81.     Upon information and belief, on or about May 25, 2016, MBB New York caused to be filed in the New York County Clerk's Office a certain loan document titled "Building Facility Agreement" describing a financing facility in connection with the Residential Tower Real Property ("Building Facility Agreement"), to which PNA begs leave to refer for its full terms at trial.

82.     Upon information and belief, MBB New York is the holder of (i) that certain Consolidated, Amended and Restated Building Facility Mortgage, Security Agreement and Assignment of Leases and Rents executed by Park Place Primary, as mortgagor to MBB New York, as Administrative Agent, as mortgagee, dated as of May 17, 2016 and recorded in

17

the Office of the New York City Register of the City of New York (the "Office") on June 23, 2016 under CRFN 2016000211378 (the "Building Loan Mortgage"), (ii) that certain Building Facility Assignment of Leases and Rents from Park Place Primary to MBB New York which was recorded in the Office on June 23, 2016 under CRFN 2016000211379 (the "Building ALR") supplemental to the Building Loan Mortgage, (iii) a UCC-1 fixture filing statement naming Park Place Primary as Debtor and MBB New York as secured party which was recorded in the Office on June 23, 2016 under CRFN 2016000211380 (the "Building Fixture Filing"; and, together with the Building Loan Mortgage and the Building ALR, collectively, the "Building Loan Encumbrances"), (iv) that certain Project Facility Mortgage on Security Agreement and Assignment of Leases and Rents by Park Place Primary, as mortgagor to MBB New York dated as of May 17, 2016 and recorded in the Office on June 23, 2016 under CRFN 2016000211382 (the "Project Loan Mortgage"), (v) that certain Project Facility Assignment of Leases and Rents from Park Place Primary to MBB New York which was recorded in the Office on June 23, 2016 under CRFN 2016000211381 (the "Project ALR") supplemental to the Project Loan Mortgage, (iii) a UCC-1 fixture filing statement naming Park Place Primary as Debtor and MBB New York as secured party which was recorded in the Office on June 23, 2016 under CRFN 2016000211383 (the "Project Fixture Filing"; and, together with the Project Loan Mortgage and the Project ALR, collectively, the "Project Loan Encumbrances").

83.    Upon information and belief, under and pursuant to the terms of said Building Facility Agreement, Building Loan Encumbrances, Project Loan Encumbrances, and other agreements among MBB New York and Park Place Primary, MBB New York is the sole, duly authorized agent for, administrator, and representative of any and all entities who have been, currently are, or in the future may become lenders, financiers or profit participants in

18

connection with the loan or financing secured by the Building Loan Encumbrances ("the Building Loan Facility") and the loan or financing secured by the Project Loan Encumbrances ("the Project Loan Facility" and, together with the Building Loan Facility, collectively "the MBB Facility"), and MBB New York is, for all purposes relevant to this action, the sole mortgagee and the sole entity upon whom process must be served by reason of any claim of lien or mortgage on the property arising from the MBB Facility.

84.    During the period between September 30, 2016 and November 14, 2019, pursuant to and in connection with the Trade Contract Agreement and at the special instance and request of Gilbane, PNA performed labor and furnished material at the Residential Tower Real Property, consisting of assistance with design and engineering of and the manufacture, fabrication, and installation of curtainwall, panels, glazing, entryways, and other work, having an agreed price and reasonable value of at least $27,894,744.27. The labor so performed and material so furnished by PNA for the Project were performed and furnished for the improvement of the Residential Tower Real Property, with the consent or at the request of Gilbane and Park Place Primary.

85.    No part of the foregoing sum of $27,894,744.27 has been paid, except that PNA has been paid the sum of $19,019,459.47 on account of the total aforesaid, leaving a balance due and owing to PNA in the sum of at least $8,875,284.80, which sum was due and owing to PNA at the time of the filing of the Corrected Lot 8 Notice of Lien hereinafter described, and remains due and owing.

86.    On or about December 27, 2019, within eight months after the last item of work performed or material furnished by PNA as aforesaid, PNA caused to be duly filed and docketed in the office of the Clerk of the County of New York a verified Notice of Mechanic's

19

Lien in the amount of $4,641,222.35, in due form, which stated the name and residence of the lienor; the name and address of lienor's attorney; the name and owner of the real property against whose interest therein a lien is claimed, and the interest of the owner so far as known to the lienor; the name of the person with whom the contract was made and to whom the lienor furnished the said labor and materials; the labor performed and materials furnished and the agreed price and value thereof insofar as known on the date of filing; the amount unpaid to the lienor for such labor and materials; the time when the first and last items of work were performed and materials were furnished; and the property subject to the lien, with a description thereof sufficient for identification.  Said Notice of Mechanic's Lien ("the Initial Lot 8 Notice of Lien") was filed as against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8, and the owner of the property was identified therein as Park Place Development Primary LLC.

87.    On or about December 30, 2019, copies of the Initial Lot 8 Notice of Lien were duly served upon Gilbane and Park Place Primary by certified mail in accordance with Lien Law §11, and proof such service was duly filed with the County Clerk of the County of New York on December 31, 2019.

88.    On or about February 19, 2020, within eight months after the last item or work performed or material furnished by PNA as aforesaid, PNA caused to be duly filed and docketed in the office of the Clerk of the County of New York a verified Corrected Notice of Mechanic's Lien in the amount of $8,875,284.80, in due form, which stated the name and residence of the lienor; the name and address of lienor's attorney; the name and owner of the real property against whose interest therein a lien is claimed, and the interest of the owner so far as known to the lienor; the name of the person with whom the contract was made and to

20

whom the lienor furnished the said labor and materials; the labor performed and materials furnished and the agreed price and value thereof insofar as known on the date of filing; the amount unpaid to the lienor for such labor and materials; the time when the first and last items of work were performed and materials were furnished; and the property subject to the lien, with a description thereof sufficient for identification.  Said Corrected Notice of Mechanic's Lien ("the Corrected Lot 8 Notice of Lien") was filed as against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8, and the owner of the property was identified therein as Park Place Development Primary LLC.

89.    On or about March 16, 2020, copies of the Corrected Lot 8 Notice of Lien" were duly served upon Gilbane and Park Place Primary by certified mail in accordance with Lien Law §11, and proof such service was duly filed with the County Clerk of the County of New York on or about March 17, 2020.

90.    The Corrected Lot 8 Notice of Lien, claimed as aforesaid, has not been paid, waived, cancelled or discharged, and no other action or proceeding at law or in equity has been brought by PNA for the foreclosure thereof, or for the recovery of the monies thereby secured or any part thereof.

91.    Upon information and belief, Gilbane has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

92.    Upon information and belief, defendant U.S. Crane & Rigging LLC ("U.S. Crane & Rigging"), a New York limited liability company having its principal place of business in the State of New York, has filed one or more Notices of Mechanic's Lien against

the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

93.    Upon information and belief, defendant Construction Realty Safety Group ("Construction Realty Safety"), a New York corporation having its principal office in the State of New York, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

94.    Upon information and belief, defendant Trade Off Plus LLC ("Trade Off Plus"), a New York limited liability company having its principal place of business in the State of New York, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

95.    Upon information and belief, defendant All-City Metal Inc. ("All-City Metal"), a New York corporation having its principal office in the State of New York, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

96.    Upon information and belief, defendant Transcontinental Steel Corp. ("Transcontinental"), a New Jersey corporation, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

97.    Upon information and belief, defendant Ismael Leyva Architect, P.C., a New York corporation having its principal office in the State of New York, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

INDEX NO. 850083/2020
RECEIVED NYSCEF: 08/03/2020

98.    Upon information and belief, defendant PERI Formwork Systems, Inc. ("Peri"), a Maryland corporation which is registered with the New York Department of State, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

99.    Upon information and belief, defendant ULE Group Corp. d/b/a United Lighting Electrical Corp. ("United Lighting"), a New York corporation having its principal office in the State of New York, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

100.    Upon information and belief, defendant S&E Bridge & Scaffold LLC ("S&E"), a New York limited liability company having its principal place of business in the State of New York, has filed one or more Notices of Mechanic's Lien against the property known by the address of 43 Park Place, New York, New York 10007, Block 126, Lot 8.

101.    Upon information and belief, each of MBB New York, Park Place Primary, Park Place Partners, Soho Properties, El-Gamal, Gilbane, U.S. Crane & Rigging, Construction Realty Safety, Trade Off Plus, All-City Metal, Transcontinental, Ismael, Peri, United Lighting, S&E, the State of New York, the City of New York, and some or all of "John Doe One" through "John Doe Ten" (such designations being intended to refer to any other entities who may claim an interest in the subject real property), has, or claims to have, an interest in, claim, or lien upon the Residential Tower Real Property, which interest, claim, or lien, if any, is subsequent and subordinate to PNA's Corrected Lot 8 Notice of Lien.

102.    An answer to the foregoing cross-claim and counterclaim is hereby demanded.

## AS AND FOR A FIFTH CROSS-CLAIM
## (TRUST FUND RIGHTS UNDER ARTICLE 3-A OF THE LIEN LAW)
(AGAINST PARK PLACE DEVELOPMENT PRIMARY LLC; PARK PLACE
PARTNERS DEVELOPMENT LLC; 45 PARK PLACE PARTNERS, LLC;
SOHO PROPERTIES GENERAL PARTNER, LLC; SOHO PROPERTIES INC.;
SHARIF EL-GAMAL; AND "JOHN DOE ELEVEN" THROUGH "JOHN DOE
TWENTY" IN CONNECTION WITH THE PROJECT)

(ASSERTED ON BEHALF OF PERMASTEELISA NORTH
AMERICA CORP. AND ALL OTHERS ENTITLED TO SHARE IN
TRUST FUNDS RECEIVED OR TO BE RECEIVED BY PARK
PLACE DEVELOPMENT PRIMARY LLC; PARK PLACE
PARTNERS DEVELOPMENT LLC; 45 PARK PLACE
PARTNERS, LLC; SOHO PROPERTIES GENERAL PARTNER,
LLC; SOHO PROPERTIES INC.; and SHARIF EL-GAMAL)

103.  PNA repeats and realleges each allegation contained in paragraphs 21
through 55, 57 through 61, 64 through 69, 72 through 77, and 80 through 101 hereof.

104.  Upon information and belief, Park Place Primary received, and may
hereafter receive, funds from MBB New York under and pursuant to the Building Facility
Agreement, the Building Loan Encumbrances, Project Loan Encumbrances, and other
agreements between MBB New York and Park Place Primary.

105.  Pursuant to Article 3-A of the Lien Law, the funds which Park Place
Primary received or may hereafter receive from MBB New York, and the rights of action with
respect thereto, constitute assets of a trust ("the Owner Trust") of which Park Place Primary is
statutory trustee.

106.  Upon information and belief, assets of the Owner Trust were received by
Park Place Primary in connection with the construction of the Project and the improvements and
work being performed by PNA, among others, at the Residential Tower Real Property.

24

107.  Pursuant to Article 3-A of the Lien Law, Park Place Primary was and still is required to apply the assets of the Owner Trust for payment of the cost of improvement and for the benefit of its contractors, subcontractors and suppliers, including PNA (hereinafter "Owner Trust Fund Beneficiaries"), and to use the assets of the Owner Trust solely for the benefit of the Owner Trust Beneficiaries, until all Owner Trust Fund Beneficiaries are fully paid, and prior to Park Place Primary obtaining any beneficial interest in the assets of the Owner Trust or using same for other purposes.

108.  The trust claims with respect to the Owner Trust have not been fully paid or discharged.

109.  PNA is a beneficiary of the Owner Trust and the holder of an unpaid trust claim, which Park Place Primary has failed and refused to pay despite due demand therefor.

110.  Upon information and belief, Park Place Primary diverted and expended substantial funds from the Owner Trust for purposes other than those authorized by Article 3-A of the Lien Law.

111.  Upon information and belief, El-Gamal was directly responsible for the actions and activities of Park Place Primary in performing its construction contract with Gilbane and in receiving and disbursing monies in connection therewith.

112.  Upon information and belief, Park Place Partners, Soho Properties, and/or El-Gamal knowingly and actively directed, and participated with, Park Place Primary in the diversion and expenditure of substantial assets of the Owner Trust for purposes other than those authorized by Article 3-A of the Lien Law.

113.  Defendants "John Doe Eleven" through "John Doe Twenty" are fictitious names of others who may have participated in or controlled the diversion of trust funds for

Case 21-10849-CSS    Doc 38-10    Filed 07/08/21    Page 27 of 32

purposes other than the payment of claims of Owner Trust Beneficiaries, and who may become parties to this litigation once their true identities are known.

114.  There are persons in addition to PNA who have or may have some claim upon or interest in the Owner Trust, and this action is brought on behalf of PNA and any other persons who have or may have a claim upon or interest in the Owner Trust.

115.  PNA has made no previous application for the relief requested herein.

116.  PNA has no remedy at law.

117.  An answer to the foregoing cross-claim is hereby demanded.

**AS AND FOR A SIXTH CROSS-CLAIM**
**(TRUST FUND RIGHTS UNDER ARTICLE 3-A OF THE LIEN LAW)**
(AGAINST GILBANE RESIDENTIAL CONSTRUCTION LLC; AND
"JOHN DOE TWENTY-ONE" THROUGH "JOHN DOE THIRTY" IN
CONNECTION WITH THE PROJECT)

(ASSERTED ON BEHALF OF PERMASTEELISA NORTH
AMERICA CORP. AND ALL OTHERS ENTITLED TO SHARE IN
TRUST FUNDS RECEIVED OR TO BE RECEIVED BY GILBANE
RESIDENTIAL CONSTRUCTION LLC)

118.  PNA repeats and realleges each allegation contained in paragraphs 21 through 55, 57 through 61, 64 through 69, 72 through 77, 80 through 101, and 104 through 116 hereof.

119.  Upon information and belief, Gilbane received, and may hereafter receive, funds from Park Place Primary under and pursuant to the CMA.

120.  Pursuant to Article 3-A of the Lien Law, the funds which Gilbane received or may hereafter receive from Park Place Primary, and the rights of action with respect thereto, constitute assets of a trust ("the Contractor Trust") of which Gilbane is statutory trustee.

121.  Upon information and belief, assets of the Contractor Trust were received by Gilbane in connection with the construction of the Project and the improvements and work being performed by PNA, among others, at the Residential Tower Real Property.

122.  Pursuant to Article 3-A of the Lien Law, Gilbane was and still is required to hold the assets of the Contractor Trust in trust for the benefit of its subcontractors and suppliers, including PNA (hereinafter "Contractor Trust Fund Beneficiaries"), and to use the assets of the Contractor Trust solely for the benefit of the Contractor Trust Beneficiaries, until all Contractor Trust Fund Beneficiaries are fully paid, and prior to Gilbane obtaining any beneficial interest in the assets of the Contractor Trust or using same for other purposes.

123.  The trust claims with respect to the Contractor Trust have not been fully paid or discharged.

124.  PNA is a beneficiary of the Contractor Trust and the holder of an unpaid trust claim, which Gilbane has failed and refused to pay despite due demand therefor.

125.  Upon information and belief, Gilbane diverted and expended substantial funds from the Contractor Trust for purposes other than those authorized by Article 3-A of the Lien Law.

126.  Defendants "John Doe Twenty-One" through "John Doe Thirty" are fictitious names of others who may have participated in or controlled the diversion of trust funds for purposes other than the payment of claims of Contractor Trust Beneficiaries, and who may become parties to this litigation once their true identities are known.

127.  There are persons in addition to PNA who have or may have some claim upon or interest in the Contractor Trust, and this action is brought on behalf of PNA and any other persons who have or may have a claim upon or interest in the Contractor Trust.

128. PNA has made no previous application for the relief requested herein.

129. PNA has no remedy at law.

130. An answer to the foregoing cross-claim is hereby demanded.

WHEREFORE, plaintiff Permasteelisa North America Corp. respectfully demands judgment as follows:

1.    On the First Cross-Claim, against defendant Gilbane Residential Construction, LLC in the sum of $8,875,284.40, plus interest thereon and the costs and disbursements of this action.

2.    Alternatively, on the Second Cross-Claim, against defendant Gilbane Residential Construction, LLC in the sum of $8,875,284.40, plus interest thereon and the costs and disbursements of this action.

3.    Alternatively, on the Third Cross-Claim, against defendants Park Place Development Primary LLC; Park Place Development Partners LLC; Soho Properties Inc.; and Sharif El-Gamal, in the sum of $8,875,284.40, jointly and severally, plus interest thereon and the costs and disbursements of this action.

4.    On the Fourth Cross-Claim and First Counterclaim, against plaintiff and all defendants (other than PNA):

   (a)    Adjusting and determining the equities of all of the parties to this action and determining the validity, extent and priority of each and all of the liens and claims which may be presented and asserted herein;

   (b)    Adjudging that Permasteelisa North American Corp., by filing and causing the docketing of the Initial Lot 8 Notice of Lien and the Corrected Lot 8 Notice of Lien, acquired a good and valid lien upon the interest of Park Place Development Primary LLC in the Residential Tower Real Property hereinabove described, in the sum of $8,875,284.40, plus interest thereon and the costs and disbursements of this action; and

28

    (c)    Adjudging that MBB New York; Park Place Development Primary LLC; Park Place Development Partners LLC; Soho Properties Inc.; Gilbane Residential Construction, LLC; U.S. Crane & Rigging LLC; Construction Realty Safety Group Inc.; Trade Off Plus, LLC; All-City Metal Inc.; the State of New York; the City of New York; and some or all of "John Doe One" through "John Doe Ten", and each of them, and all persons claiming by, through or under them, or any of them, be forever foreclosed of all equity of redemption or other lien, claim or interest in and to the Residential Tower Real Property.

5. On the Fifth Cross-Claim, against defendants Park Place Development Primary LLC; Park Place Development Partners LLC; 45 Park Place Partners, LLC; Soho Properties General Partner, LLC; Soho Properties Inc.; Sharif El-Gamal; and "John Doe Eleven" through "John Doe Twenty", for an order and judgment:

    (a)  To compel an interim and/or final accounting by Park Place Development Primary LLC; Park Place Development Partners LLC; 45 Park Place Partners, LLC; Soho Properties General Partner, LLC; Soho Properties Inc.; Sharif El-Gamal, and "John Doe Eleven" through "John Doe Twenty" concerning the Owner Trust Funds;

    (b)  To identify and recover trust funds in the hands of any person together with interest accrued thereon from the time of the diversion;

    (c)  To enjoin any further diversions:

    (d)  To set aside any unlawful diversion of the Owner Trust Funds whether in the form of payment, assignment, transfer or other unlawful diversion;

    (e)  To require Park Place Development Primary LLC; Park Place Development Partners LLC; 45 Park Place Partners, LLC; Soho Properties General Partner, LLC; Soho Properties Inc.; and Sharif El-Gamal to give security to ensure the proper payment of monies owed to PNA for the improvement to the Residential Tower Real Property; and

    (f)  To direct such proceedings as may be necessary to identify and bring before the Court and under its control, all of such trust funds and all property of every name and nature into which the same may have been diverted, and distribute the same among all parties and persons entitled thereto, and, in connection therewith, award PNA the sum of $8,875,284.40, plus interest from December 4, 2019, together with its attorneys' fees, costs and disbursements.

6.  On the Sixth Cross-Claim, against Gilbane Residential Construction LLC and

"John Doe Twenty-One through John Doe Thirty", for an order and judgment:

> (a)  To compel an interim and/or final accounting by Gilbane Residential Construction LLC and "John Doe Twenty-One" through "John Doe Thirty" concerning the Contractor Trust Funds;
> (b)  To identify and recover trust funds in the hands of any person together with interest accrued thereon from the time of the diversion;
>
> (c)  To enjoin any further diversions:
>
> (d)  To set aside any unlawful diversion of the Contractor Trust Funds whether in the form of payment, assignment, transfer or other unlawful diversion;
>
> (e)  To require Gilbane Residential Construction LLC to give security to ensure the proper payment of monies owed to PNA for the improvement to the Residential Tower Real Property; and
>
> (f)  To direct such proceedings as may be necessary to identify and bring before the Court and under its control, all of such trust funds and all property of every name and nature into which the same may have been diverted, and distribute the same among all parties and persons entitled thereto, and, in connection therewith, award PNA the sum of $8,875,284.40, plus interest from December 4, 2019, together with its attorneys' fees, costs and disbursements.

7.  As to all Cross-Claims and the Lien Foreclosure Counterclaim, for such other,

further, or different relief as the Court may determine is just, proper and equitable.

Dated: New York, New York
        August 3, 2020

**SCHIFF HARDIN LLP**

Gary L. Rubin

*Attorneys for Permasteelisa North America Corp.*
*(Defendant and Cross-Claim/Counterclaim Plaintiff)*
1185 Avenue of the Americas, Suite 3000
New York, New York 10036
Tel. 212.753.5000
grubin@schiffhardin.com

TO:  ALL COUNSEL (via NYSCEF)

30

**VERIFICATION**

STATE OF NEW YORK )
                          ) ss.:
COUNTY OF NEW YORK )

        GARY L. RUBIN, being duly sworn, deposes and says:

        I am a member of the firm of SCHIFF HARDIN LLP, attorneys for PERMASTEELISA NORTH AMERICA CORP. ("PNA"), one of the defendants and cross-claim/counterclaim plaintiff in this action. I have read the foregoing Answer to First Amended Verified Complaint with Cross-Claims and Lien Foreclosure Counterclaim and know the contents thereof, and the same is true to my own knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. The reason why this verification is made by me is that PNA is not in the county where I have my office.

        The sources of my information and the grounds of my belief as to all matters not herein stated upon my own knowledge are as follows: books and records of PNA and conversations with individuals who were involved in the construction project which is the subject of this action.

                                 _____
                                   Gary L. Rubin

Sworn to before me this
31st day of July, 2020

_____
     Notary Public

BATTERMAN RANDALL
Notary Public, State of New York
No. 01BA6188064
Qualified in New York County
Commission Expires June 02, 20_24_