## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| -------------------------------------------------------- x | | |
| In re: | : | Chapter 7 |
| | : | |
| PARK PLACE DEVELOPMENT | : | Case No. 21-10849 (CSS) |
| PRIMARY, LLC, [1] | : | |
| | : | |
| Alleged Debtor. | : | **Re: Dkt. No. 35** |
| -------------------------------------------------------- x | | |

## OBJECTION OF THE PETITIONING CREDITORS TO MOTION OF LENDERS FOR ENTRY OF AN ORDER DISMISSING THE INVOLUNTARY PETITION PURSUANT TO SECTIONS 707 AND 305 OR, IN THE ALTERNATIVE, <u>GRANTING RELIEF FROM THE AUTOMATIC STAY</u>

Permasteelisa North America Corp. ("<u>PNA</u>"), Construction Realty Safety Group Inc.

("<u>CR Safety</u>"), Trade Off Plus, LLC ("<u>Trade Off</u>"), S&E Bridge & Scaffold LLC ("<u>S&E</u>"), and

Ismael Leyva Architect, P.C. ("<u>ILA</u>", together with PNA, CR Safety, Trade Off and S&E, the

"<u>Petitioning Creditors</u>"),[2] by and through their attorneys, Venable LLP, respectfully submit this

Objection (the "<u>Objection</u>") to the *Motion for Entry of an Order Dismissing the Involuntary*

*Petition Pursuant to 11 U.S.C. 707(a) and 305(a) or, in the Alternative, Granting Relief from the*

*Automatic Stay Pursuant to 11 U.S.C. 362(d)(1), (2)* [Dkt. No. 35] (the "<u>Lenders' Motion to</u>

<u>Dismiss</u>") filed by Malayan Banking Berhad, New York Branch (the "<u>Administrative Agent</u>"), as

Administrative Agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A.,

New York Branch, Warba Bank K.S.C.P., and 45 Park Place Investments, LLC (collectively

---

[1] The last four digits of the Alleged Debtor's U.S. tax identification number are 1708. The address of the Debtor's corporate headquarters is: 31 West 27th Street, 9th Floor, New York, NY 10001.

[2] Pursuant to the *Notice of Withdrawal of Domani Inspection Services, Inc. As A Petitioning Creditor* [Dkt. No. 60] and the supporting *Declaration of Adam Eisen* attached thereto, Domani Inspection Services, Inc. withdrew as a petitioning creditor.

with the Administrative Agent, the "<u>Lenders</u>"). In support of the Objection, the Petitioning Creditors respectfully state as follows:

## <u>PRELIMINARY STATEMENT</u>[3]

First and foremost, the Lenders' Motion to Dismiss is premature. As set forth in the Petitioning Creditors' Motion to Stay, applicable law makes clear that the Lenders lack standing to contest the Involuntary Petition. The Lenders' Motion to Dismiss may not be brought until *after* the order for relief is entered, as it is well-settled law that only the alleged debtor has standing to contest an involuntary petition. Accordingly, the Lenders' Motion to Dismiss should be rescheduled for hearing only after the Court has adjudicated the Debtor's Motion to Dismiss and an order for relief has been entered.

Further, the Lenders' Motion to Dismiss fails for much of the same reasons the Debtor's Motion to Dismiss fails—the Involuntary Petition was filed in good faith and serves a valid bankruptcy purpose. The impetus, utility and propriety of the Involuntary Petition are set forth in detail in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss and the Supporting Declarations, which make clear, among other things, that there was a proper purpose for filing of the Involuntary Petition; that this Court is the best forum to resolve the myriad of issues and potential claims surrounding the Debtor's stalled Project; and, contrary to the Debtor's protestations, that the Petitioning Creditors obtained no litigation or similar advantage by filing the Involuntary Petition, which, if granted, will benefit *all* of the Debtor's stakeholders, not just those party to the Foreclosure Action.

---

[3] Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them in this Objection.

The Lenders' lift stay request is premised on the alleged lack of equity the Debtor holds in the Project and the Debtor's inability to provide adequate protection, but the Lenders' assumptions regarding the value of the Project and their claims related thereto, the validity, amount and priority of their liens and claims, and that the Debtor has no assets other than its interest in the Project are in dispute.  It is entirely plausible that the Project is worth more than the aggregated value of any and all valid liens and claims against it and/or that the Debtor can provide adequate protection, if necessary, but discovery, including expert discovery and reports, and an evidentiary hearing will be required to make those determinations.  All of this will be unnecessary to the extent this Court dismisses the Involuntary Petition and the lift stay request is mooted.  To avoid the potential substantial waste of resources, judicial economy and efficiency necessitate that the Lenders' lift stay request be stayed pending entry of the order for relief.

## **BACKGROUND**

1.     On May 24, 2021, the Petitioning Creditors filed the involuntary petition for relief under chapter 7 of the Bankruptcy Code [Dkt. No. 1] (the "Involuntary Petition") against Park Place Development Primary, LLC (the "Debtor").

2.     On July 6, 2021, the Debtor filed the *Motion of the Alleged Debtor Pursuant to Sections 303 and 305 of the Bankruptcy Code for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition* [Dkt. No. 31] (the "Debtor's Motion to Dismiss", together with the Lenders' Motion to Dismiss, the "Motions to Dismiss").  Pursuant to the Debtor's Motion to Dismiss, the Debtor seeks, *inter alia*, dismissal of the Involuntary Petition on a number of grounds, including that the Petitioning Creditors are not qualified to file an involuntary petition under section 303(b) of the Bankruptcy Code and that the Involuntary Petition was filed for an

improper purpose and in bad faith. To the extent the Court is not inclined to dismiss the Involuntary Petition on those grounds, the Debtor also seeks abstention.

3.        On July 8, 2021, the Lenders' filed the Lenders' Motion to Dismiss. By way of the Lenders' Motion to Dismiss, the Lenders also seek dismissal of the Involuntary Petition with prejudice on the grounds that the Involuntary Petition was filed for an improper purpose and in bad faith and, in the alternative, for abstention. To the extent the Court is not inclined to dismiss the Involuntary Petition, the Lenders also seek relief from the automatic stay.

4.        On July 22, 2021, the Petitioning Creditors filed the *Motion for Entry of an Order Staying the Lenders' Motion to Dismiss* [Dkt. No. 52] (the "Motion to Stay"), seeking a stay of litigation and adjudication of the Lenders' Motion to Dismiss until after the Court has considered the Debtor's Motion to Dismiss and entered an order for relief on the Involuntary Petition.[4]

5.        On July 22, 2021, the Debtor filed its *Response and Limited Objection of the Alleged Debtor to Lenders' Motion to Dismiss* [Dkt. No. 51] (the "Debtor's Objection to Lenders' Motion to Dismiss"). While the Debtor joins in the Lenders' ultimate requested relief of dismissal of the Involuntary Petition based on bad faith and lack of a valid bankruptcy purpose, the Debtor requests that the Involuntary Petition be dismissed without prejudice (as opposed to with prejudice, as sought by the Lenders). The Debtor also contends that litigation of the Lenders' lift stay request should be stayed pending entry of the order for relief. The Petitioning Creditors disagree that the Involuntary Petition should be dismissed for the reasons set forth herein and in the Petitioning Creditors' Objection to Debtor's Motion to Dismiss, but agree with the Debtor that the Lenders' lift stay request is premature and that to the extent the Court is inclined to dismiss the Involuntary Petition, such dismissal should be without prejudice.

---

[4] The arguments set forth in the Motion to Stay are incorporated herein by reference.

6.     On August 4, 2021, at the Lenders' request, the Court held a status conference on the Motions to Dismiss and Motion to Stay, among other things.

7.     Following the August 4th status conference, the Petitioning Creditors, Debtor and Lenders entered into a stipulation (the "Stipulation") pursuant to which (i) the deadline for the Petitioning Creditors to object or otherwise respond to the Debtor's Motion to Dismiss and the Lenders' Motion to Dismiss, including, without limitation, incorporating the relief requested in the Motion to Stay, was set for September 9, 2021 at 4:00 p.m. (ET), and (ii) the deadline for the Debtor and Lenders to reply thereto was set for September 20, 2021 at 4:00 p.m. (ET). The Court approved the Stipulation by Order dated August 9, 2021 [Dkt. No. 62].

8.     On August 11, 2021, the hearing on the Motions to Dismiss and Motion to Stay was rescheduled for October 1, 2021 at 10:00 a.m. (ET). *See* Dkt. No. 64.

9.     On September 9, 2021, the Petitioning Creditors' filed their *Objection to the Motion of the Alleged Debtor Pursuant to Sections 303 and 505 of the Bankruptcy Code for Dismissal of, or Abstention from, the Involuntary Bankruptcy Petition* [Dkt. No. 65] (the "Petitioning Creditors' Objection to the Debtor's Motion to Dismiss"),[5] together with the following supplemental declarations in support thereof:

- *Declaration of Jeffrey S. Sabin in Support of the Objection to the Debtor's Motion to Dismiss* [Dkt. No. 66];

- *Declaration of Ismael Leyva in Support of the Objection to the Debtor's Motion to Dismiss* [Dkt. No. 67]; and

- *Declaration of Thomas J. Garcia in Support of the Objection to the Debtor's Motion to Dismiss* [Dkt. No. 68] (collectively, the "Supporting Declarations").[6]

---

[5] Capitalized terms not defined herein shall have the meanings ascribed to them in the Petitioning Creditor's Objection to Debtor's Motion to Dismiss.

[6] The factual allegations and arguments set forth in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss and Supporting Declarations are incorporated herein by reference.

## OBJECTION AND REASONS THEREFOR

**I.**   ***The Lenders lack standing to contest Involuntary Petition.***

10.     The Petitioning Creditors' arguments with respect to the Lenders' lack of standing to contest the Involuntary Petition are set forth in detail in the Motion to Stay and are incorporated herein by reference.

11.     In summary, applicable law makes clear that only the alleged debtor may challenge an involuntary petition.  Section 303(d) of the Bankruptcy Code allows the "***debtor***… [to] file an answer to a[n] [involuntary] petition under this section." 11 U.S.C. § 303(d) (emphasis added).  Rule 1011(a) of the Bankruptcy Rules provides that "[t]he ***debtor*** named in an involuntary petition may contest the petition."  Fed. R. Bankr. P. 1011(a) (emphasis added).  If the alleged debtor fails to respond to the involuntary petition in accordance with Rule 1011, then the Court "shall enter an order for the relief requested in the petition."  *Id.* at 1013(b).  If the alleged debtor contests the involuntary proceeding, as the Debtor has here, then a hearing on the merits is held.  *Id.* at 1013(a).  As a non-petitioning creditor, the Lenders simply have no standing to contest the Involuntary Petition.  *In re QDN, LLC*, 363 F. App'x 873, 875 (3d Cir. 2010) (collecting cases); *In re Taylor & Assocs., L.P.*, 191 B.R. 374, 381 (Bankr. E.D. Tenn. 1996).

12.     To allow a creditor standing to seek dismissal of an involuntary petition pursuant to sections 305(a) and 707(a) of the Bankruptcy Code during the gap period, as the Lenders have here, would be in direct contravention of section 303(d) of the Bankruptcy Code and Rule 1011(a) of the Bankruptcy Rules, which provide that only the alleged debtor may contest an involuntary petition.  Indeed, "[t]he filing of an involuntary petition is an adversarial proceeding between the filers and the debtor, which may contest the filing at a hearing."  *QDN*, 363 F.

App'x at 875 *citing* 11 U.S.C. § 303. "Congress chose to preclude creditors from opposing involuntary petitions because such opposition invariably was to protect a preference or to gain some unfair advantage at the expense of other creditors, contrary to the policy of providing equitable distribution of assets among all creditors." *Id. citing In re Earl's Tire Serv., Inc*., 6 B.R. 1019, 1022 (D. Del. 1980).

13.     The Lenders cite solely to *In re MacFarlane Webster Assocs*., 121 B.R. 694 (Bankr. S.D.N.Y. 1990) and *In re Jr. Food Mart, Inc.*, 234 B.R. 420 (Bankr. E.D. Ark. 1999) to support their position that "while creditors may not contest the filing of an involuntary petition under section 303, courts have held that a creditor can file a motion to dismiss pursuant to sections 305(a) and 707(a)." A close read of these cases, however, confirms that a creditor's motion to dismiss for cause must be adjudicated only after entry of an order for relief.

14.     In *In re MacFarlane*, the senior lender's section 707(a) motion to dismiss that was at issue was filed well after the alleged debtor failed to contest the involuntary petition and the order for relief was entered. 121 B.R. 694, 700 (Bankr. S.D.N.Y. 1990). Whether a creditor had standing to seek dismissal of an involuntary petition prior to entry of the order for relief (in contravention of section 303(d) of the Bankruptcy Code and Rule 1011(a) of the Bankruptcy Rules) was not at issue in the case. Nevertheless, the court recognized that that non-petitioning creditors are precluded by the Bankruptcy Code from opposing an involuntary petition. *Id.* Therefore, the only remedy for abuse by a petitioning creditor in an involuntary chapter 7 case is a motion to dismiss for cause—even where the debtor has no interest in contesting the petition. *Id.*; *see* Fed. R. Bankr. P. 1013(b) (failure of the alleged debtor to respond to the involuntary petition requires the court to enter the order for relief). If a creditor cannot challenge an

involuntary petition (even when the alleged debtor fails to do so), then its motion to dismiss for cause must come after entry of the order for relief.

15.     In *In re Food Mart*, the alleged debtor, like in *MacFarlane*, failed to contest the involuntary petition.  234 B.R. 420, 421 (Bankr. E.D. Ark. 1999).  Instead, entities related to the alleged debtor filed a responsive pleading that, in part, contained a motion to dismiss for cause under section 707(a) or for abstention.  *Id.*  The court held that the respondents lacked standing to object to the involuntary petition, entered the order for relief, and then ordered that "the motions to dismiss or abstain… be set for [a later] hearing by separate order."  *Id.* at 421-422.

16.     The only way to harmonize the well-settled law that only an alleged debtor may contest an involuntary petition, on the one hand, with a creditor's ability to seek dismissal pursuant to sections 305(a) and 707(a), on the other hand, is that a creditor may only seek dismissal after the order for relief is entered and the case proceeds as an involuntary proceeding.  *See In re New Towne Dev., LLC*, 404 B.R. 140, 143 (Bankr. M.D. La. 2009) (the court considered the non-petitioning creditor's renewed motion to dismiss involuntary chapter 11 after the order for relief had been entered, which motion had been previously dismissed prior to the order for relief being entered because the creditor lacked standing to contest the involuntary petition).

17.     Accordingly, the Lenders' Motion to Dismiss is premature and the Court should schedule it for hearing only after the order for relief is entered.

**II.**     ***The Involuntary Petition was not filed in bad faith.***

18.     Pursuant to section 707(a), "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause…."  11 U.S.C. § 707(a).  The Third Circuit has held that the bankruptcy court may dismiss a petition for "cause" under section 707(a) if the petition

was not filed in good faith. *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000); *Perlin v. Hitachi Cap. Am. Corp.*, 497 F.3d 364, 369 (3d Cir. 2007). In analyzing whether a petition was filed in good faith, "courts should assess the debtor's good faith on an 'ad hoc basis,' considering the 'honest intention' of the debtor and 'whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law.'" *Perlin,* 497 F.3d at 372 *citing In re Tamecki*, 229 F.3d at 207. An assessment of a petitioner's good faith requires consideration of all the facts and circumstances surrounding the petitioner's filing for bankruptcy. *Id.*

19. The Lenders argue that the Involuntary Petition serves no valid purpose because its goal is "to obtain the benefit of the automatic stay to avoid responding to the Lender's Motion for Summary Judgment and further delay the state-law foreclosure process[,]" not to preserve value or maximize distributions to the Debtor's creditors. Lenders' Mot. to Dismiss at pp 10-12. Nothing could be further from the truth.

20. The impetus, utility and propriety of the Involuntary Petition are set forth in detail in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss and Supporting Declarations, which make clear (i) that there was a proper purpose for the filing of the Involuntary Petition, including, but not limited to, (x) preserving the Debtor's assets, including the unfinished Project, which has sat naked to the elements for almost two years, and claims against third parties, including the Lenders, (y) providing an opportunity to market and sell the stalled Project in an expeditious manner, free and clear of lien disputes plaguing the Project, and (z) giving a chapter 7 trustee the opportunity to investigate and prosecute claims, including (1) claims arising from the numerous documentary inconsistencies and/or public misrepresentations made by the Debtor and its affiliates in connection with the Project, and (2) claims against the

Lenders,[7] all in order to maximize the value of the Debtor's assets for the benefit of *all* creditors, not just those involved in the Foreclosure Action; (ii) that the Petitioning Creditors gained no litigation or similar advantage by the filing of the Involuntary Petition; and (iii) that this Court is the best forum to resolve the myriad of issues surrounding the Project. Instead of repeating all the factual allegations and arguments set forth in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss and Supporting Declarations, the Petitioning Creditors incorporate the same herein by reference.

21.     Both cases cited by the Lenders to support their position that the Involuntary Petition serves no valid bankruptcy purpose, *In re GVS Portfolio I B, LLC*, 2021 Bankr. LEXIS 1513 (June 4, 2021) and *In re Forever Green Ath. Fields, Inc*., 500 B.R. 413 (Bankr. E.D. Pa. 2013), are readily distinguishable.

22.     In *GVS*, this Court dismissed the debtor's voluntary chapter 11 petition after determining that the petition was filed as a litigation tactic and served no valid bankruptcy purpose. *GVS,* LEXIS, 1513 at *21. Unlike the case at hand, *GVS* involved a voluntary chapter 11 petition filed by the debtor (and owner of the property subject to foreclosure), not an involuntary chapter 7 petition filed by creditors, on the eve of the foreclosure sale—the terms of which had been agreed to by GVS, the debtor, and its then lender and approved by order of the state court. *See id.* at *20-21. Moreover, in rendering its decision, the *GVS* Court emphasized the fact that the dispute at issue was no more than a two-party dispute. *Id.* Here, the Debtor estimates that it has more than 85 creditors, only some of which are parties to the Foreclosure Action. Further, the Involuntary Petition was not filed on the eve of foreclosure or a foreclosure sale. Rather, the New York Court advised the parties that they should not expect the court to

---

[7] *See, e.g.,* fn. 10, *infra.*

address pending dispositive motions, including a pre-discovery motion for summary judgment filed by the Lenders, for at least a year after such motions were fully briefed and submitted to the court, which has not yet occurred.[8] In stark contrast to *GVS*, the purpose of the Involuntary Petition was not to delay the Foreclosure Action and sale of the Project. Rather, the purpose was to protect and preserve the value of the unfinished Project and seek a trustee who would have the power and authority to expeditiously sell the Project, free and clear of lien disputes, and investigate, and potentially prosecute, claims arising out of the Project-related transactions for the benefit of all 85+ creditors of the estate.

23.     In *Forever Green*, the single petitioning creditor, Charles Dawson ("Dawson"), was a former sales representative of the debtor, Forever Green, and the owner of ProGreen, a competitor of Forever Green. *In re Forever Green Athletic Fields, Inc.,* 804 F.3d 328, 330 (3d Cir. 2015). Forever Green sued ProGreen for $5 million for the diversion of corporate assets (the "Diversion Action"). *Id.* While that litigation progressed, Dawson filed a separate suit against Forever Green for unpaid wages (the "Wages Action"), which ended with entry of a consent judgment that totaled approximately $300,000. *Id.* at 330-331. While the Diversion Action was still running its course, the parties agreed to arbitrate their claims. *Id.* at 331. However, in the weeks after Dawson obtained the consent judgment in the Wages Action, he filed a motion to terminate the arbitration proceeding in the Diversion Action. *Id.* As articulated by the Third Circuit on appeal, "[l]ight on meritorious arguments, Dawson's plan was to use the consent judgment to garnish the arbitrator's fees, thereby forcing the arbitrator to halt the arbitration. Dawson… said [he] would keep the arbitration suspended until Forever Green paid on the consent judgment. [He] also threatened to file an involuntary petition unless Forever Green

---

[8] No transcript of the February 25, 2021 court hearing appears in the online docket of the New York Court, and it does not appear that any such transcript was made.

agreed to stop the proceedings. Keeping his word, Dawson filed an involuntary petition after Forever Green tried to reinstate the arbitration." *Id.* at 336. And in doing so, "[h]e put his own interests above all others[,]" obstructed "Forever Green from pursing its largest asset [the claim against his company, ProGreen], the potential proceeds of which Forever Green could have used to pay its creditors[,]" and failed to engage "in the type of due diligence and sober decision making-making process that should precede any involuntary filing." *Id.* at 336-337. Further, in the judgment of the bankruptcy court, Forever Green had <u>no assets</u> that could be liquidated. *Forever Green*, 500 B.R. at 430. The facts and circumstances in *Forever Green* evidence a quintessential bad faith filing. They are also polar opposite to the facts and circumstances surrounding the filing of the Involuntary Petition, as discussed in more detail herein and in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss. If anything, *Forever Green* demonstrates why the Involuntary Petition was anything but a bad-faith filing.

24. The Lenders also argue that no valid bankruptcy purpose exists because the Debtor "is a single purpose entity that has no assets other than its interest in the [Project]" and the Debtor has no equity in the Project. Lenders' Mot. to Dismiss at p. 12. Since "the Debtor has no assets to marshal," the Lenders contend that the Involuntary Petition has no valid bankruptcy purpose. *Id.* However, although the Debtor's equity cushion may be relevant to a request for stay relief, the Lenders fail to cite any authority that considered the Debtor's equity cushion in determining the propriety of an involuntary petition. Moreover, the argument relies on a number of contested or incorrect assumptions, including the value of the Project[9] and the

---

[9] The Lenders assert that the value of the Project is currently $89,900,000, well less than the Lenders' alleged debt, *see* Lenders Mot. to Dismiss at p. 12, but the Debtor contests this valuation, *see* Debtor's Obj. to Lenders' Mot. to Dismiss at p. 5. If the Court enters the order for relief, valuation will be likely be a threshold issue in this matter, which will require discovery, including expert discovery and reports.

Lenders' claims related thereto,[10] the validity, amount and priority of the Lenders' liens,[11] and that the Debtor has no assets other than its interest in the Project.[12] It is entirely plausible that the Project is worth more than the aggregated value of all valid liens against it. In any event, the Petitioning Creditors agree with the Debtor that litigation of these issues should be stayed for the sake of judicial economy and efficiency pending entry of the order for relief. *See* Debtor's Obj. to Lenders' Mot. to Dismiss at p. 5.

25. Further, the Lenders allege that "[t]he bankruptcy estate does not have the financial resources necessary to preserve the Property to conclusion of the chapter 7 proceeding." Lenders' Mot. to Dismiss at p. 12. In support of this claim, the Lenders assert that the Debtor has been unable to provide funds necessary to preserve the Project, so they have been making protective advance payments. *Id.* According to the Lenders, those payments will aggregate to more than $689,000 over the next six months. *Id.* It is not clear to the Petitioning Creditors whether the Debtor has been "unable" to fund the protective advances or "unwilling" to do so. It is often the case that a borrower stops making all payments related to the underlying debt and collateral that is the subject of a foreclosure action, especially when the borrower not only disputes the lenders' claims, but makes affirmative liability claims against the lender. In

---

[10] The validity and value of the Lenders' purported claim and/or liens are at issue. For example, the Debtor filed a motion to dismiss the Foreclosure Action (not yet briefed by the parties or submitted to the New York Court for determination), claiming, among other things, that the Lenders engaged in acts constituting lender liability. In addition, on June 9, 2020, the Debtor served and filed a *Summons With Notice* on the Lenders, alleging, among other things, claims based on fraudulent inducement, fraudulent misrepresentation, and breach of contract. Further, the Petitioning Creditors submit that a chapter 7 trustee may be able to bring, among other claims, a Delaware *ultra vires* claim to void the BFA obligations, which may have significant impact on the Lenders' purported claim.

[11] As evidenced by the pleadings/claims in the Foreclosure Action, among other things, the validity, amount and priority of the Lenders' liens are also at issue. *See also* fn. 10, *supra.*, fn. 12, *infra.*

[12] In addition to the Debtor's interest in the Project, the Debtor may have claims against the Lenders (and other third parties), *see, e.g.,* fn. 10, *supra*, avoidance actions, an *ultra vires* claim with respect to the BFA, *see, e.g.,* Petitioning Creditors' Obj. to Debtor's Mot. to Dismiss at pp. 12-14, cash reserves in accordance with the BFA, deposits from condo sales, and may have an interest in the ZLDA, among other things.

addition, it is not clear as to whether the Lenders would be willing to continue to make protective advances to protect their purported collateral in a bankruptcy proceeding.[13] The Lenders' Motion to Dismiss is silent on this point. In any event, the Lenders' concern about the financial wherewithal of the estate to protect the Project is belied by the fact that the Debtor has stated that "[i]f the Involuntary Petition is not dismissed, then the Alleged Debtor would most likely convert this case to a chapter 11 case…." Debtor's Obj. to Lenders' Mot. to Dismiss at p. 5. If this case was to proceed under chapter 11, the Debtor would be required to have sufficient funding to cover administrative expenses of the estate, including preservation of the Project.

26. The Lenders further contend that the Involuntary Petition is unnecessary because a Receiver has been appointed in the in the Foreclosure Action "with the power and authority to preserve and conserve the Mortgaged Property…." Lenders' Mot. to Dismiss at p. 12. The benefits of a chapter 7 proceeding over the Foreclosure Action are numerous, as outlined herein and in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss. Of note, however, is that the Receiver has limited funds to safeguard the Project, relying solely on the Lenders' protective advances. *Id.* Moreover, unlike a chapter 7 trustee, the Receiver is not charged with doing anything to maximize the Project's value and does not have the power to investigate and prosecute claims on behalf of the estate, including claims against the Lenders (whom selected the Receiver), and actions that may be avoidable, voidable or unenforceable against the Debtor.

27. Finally, the Lenders submit that the Petitioning Creditors filed the Involuntary Petition "as a litigation tactic to escape the Lenders' Motion for Summary Judgment and relocate to what they hope will be a friendlier forum." *Id.* at pp. 13-14. The Petitioning Creditors did not file the Involuntary Petition to seek a "friendlier forum" to further their interests at the expense

---

[13] Such protective advances would almost certainly constitute administrative expenses, subject to payment from the proceeds of the sale of the Project.

of others.  Rather, the Petitioning Creditors filed the Involuntary Petition because they believe that this Court is the best forum for addressing all of the issues underlying the Debtor's stalled Project for the benefit of *all* of the Debtor's stakeholders, not just those party to the Foreclosure Action.  It is of no consequence that the Involuntary Petition was filed just prior to the deadline to respond to the pre-discovery motion for summary judgment filed by the Lenders in the Foreclosure Action.  As discussed herein, although pending since March 2020, the Foreclosure Action seems to be no closer to its end than to its beginning.  As evidenced by the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss, the Involuntary Petition was filed after an extensive review of the transactions and circumstances surrounding the BFA and the potential claims associated therewith that may be investigated and brought by a chapter 7 trustee, and a thorough analysis of the other benefits of a chapter 7 proceeding vis-à-vis the Foreclosure Action, including that the Project, which has sat unfinished for over two years, could be sold expeditiously in bankruptcy, free and clear of the lien disputes that plague it, in a much more efficient and timely manner.

28.     For the reasons set forth herein and in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss, the Petitioning Creditors believe, in good faith, that the Debtor, all of its more than 85 creditors, and its estate, including the Project, would be best served by the filing of a chapter 7 case in which a chapter 7 trustee could use the powers and authority granted to it under the Bankruptcy Code to market and sell the Project, resolve inter-creditor disputes, investigate historical discrepancies and wrongful preferential treatment involving the Debtor and its affiliates, and maximize value for all interest holders.

29.     Clearly, the Petitioning Creditors have filed the Involuntary Petition in good faith, with an honest intention and without abuse of the provisions, purpose, or spirit of bankruptcy

law.  Accordingly, the Lenders' Motion to Dismiss should be denied and the order for relief should be entered.

**III.** ***This Court should not abstain from entering an order for relief in this case.***

30.     Section 305(a)(1) of the Bankruptcy Code provides that: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).  This Court recognizes that abstention is a form of extraordinary relief and should only be used in extreme circumstances. *See In re Eht. US. 1*, 2021, Bankr. LEXIS 1477, *39 (Bankr. D. Del. June 1, 2020) ("'abstention under section 305(a) is a power that should only be utilized under extraordinary circumstances,'" citing *Crown Vill Farm LLC v. Arl. L.L.C. (In re Crown Vill Farm LLC)*, 415 B.R. 86, 96 (Bankr. D. Del. 2009)).  The movant bears the burden of proving that the interests of ***both*** the debtor and the creditors would be better served by granting relief under section 305(a), which, according to this Court, "is [a] substantial burden" and not merely a balancing test.  *Id.*

31.     In summary, the Lenders' argue abstention is warranted because "the bankruptcy court is not the most economical and efficient forum to resolve this dispute because neither the Alleged Debtor nor the Petitioning Creditors need relief under the Bankruptcy Code[,]" and that the pending Foreclosure Proceeding in the New York Court "will efficiently achieve an equitable distribution of the Alleged Debtor's single asset."  Lenders' Mot. to Dismiss at p. 16.  The Lenders also aver that the same relief is available to the Petitioning Creditors in the Foreclosure Action and that that action is preferable because of its advanced procedural posture.  *Id.* at pp. 16-17.

32.     The primary case cited by the Lenders in support of abstention is *In re Newbury Operating LLC,* Bankr. Lexis 773, at *38-39 (Mar. 25, 2021).  In *Newbury*, a commercial landlord

commenced a civil action against Newbury, its tenant and the operator of a parking garage, in the New York County Supreme Court, to collect unpaid rents. *Newbury*, LEXIS, 773 at \*6. Eventually, the landlord moved for the appointment of a receiver with authority to retain a parking garage operator to operate the garage and collect fees generated therefrom. *Id.* Prior to the hearing on the motion to appoint a receiver, and in the midst of a statewide moratorium on evictions due the COVID-19 pandemic, the landlord commenced an involuntary petition against Newbury, thereby staying its own, previously filed state court action. *Id.* at \*6-7, 13. After dismissing the involuntary petition for cause under section 707(a), the bankruptcy court turned to Newbury's abstention argument, holding that abstention was warranted under the circumstances because the landlord could obtain substantially the same relief in the state court action, the bankruptcy court was not "a collection agency," and the state court was the most economical and efficient forum to resolve the dispute at issue. *Id.* at \*36-41. Unlike the case at hand, fundamental to the *Newbury* Court's decision was its finding that the dispute at issue was nothing more than a two-party dispute and that the landlord (and sole petitioning creditor) could obtain substantially the same relief in the state court action—an action it initiated. The same is not true here. The Debtor has over 85 creditors, many of whom are not parties to the Foreclosure Action. As set forth herein and in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss, a chapter 7 bankruptcy provides substantial benefits for *all* of the Debtor's creditors, not just those party to the Foreclosure Action, including the ability of a chapter 7 trustee to use the powers and authority granted to it under the Bankruptcy Code to market and sell the Project in an efficient and timely manner, free of liens, resolve inter-creditor disputes, investigate historical discrepancies and wrongful

preferential treatment involving the Debtor and its affiliates, and maximize value for *all* interest holders.[14]

33.      Further, the Foreclosure Action is stalled in the New York Court and briefing of pending dispositive motions has not been completed, nor has discovery been taken in the action. The Receiver has limited funds to continue protecting the Project, which the Lenders estimate will cost over $689,000 over the next six months alone.  *See* Lenders' Mot. to Dismiss at p. 12. There is simply no judicial economy to be served by relying on the Foreclosure Action.

34.      As a practical matter, abstention will only cause delay, which benefits nobody but the Debtor's shareholder, Sharif.  Under these circumstances, both the Debtor, its assets, and all creditors will be better served by the entry of an order for relief in this case and the appointment of a chapter 7 trustee.

**IV.**      ***The Lenders' request for stay relief should be litigated only if an order for relief is entered.***

35.      To the extent the Court declines to dismiss the Involuntary Petition and enters the order for relief, the Lenders request that the Court grant them relief from the automatic stay so that they may pursue the relief requested in the Foreclosure Action.  *Id.* at p. 19.   In support of this request, the Lenders argue that stay relief is warranted due to the Petitioning Creditors' bad-faith filing of the Involuntary Petition and because the Debtor has no equity in the Project or the financial wherewithal to provide adequate protection.  *Id.* at pp. 20-21.

36.      The Lenders' bad-faith filing argument is without merit for all the reasons set forth herein and in the Petitioning Creditors' Objection to the Debtor's Motion to Dismiss.

---

[14] Importantly, the Petitioning Creditors are not the sole beneficiaries of the estate recoveries through litigation under the Bankruptcy Code, a reality that weighed in favor of dismissal of the involuntary petition filed by the landlord in *Newbury.  See Newbury*, LEXIS, 773 at *34.

37. With respect to the remaining arguments of the Lenders for stay relief (*i.e.,* lack of equity cushion and inability to provide adequate protection), the Petitioning Creditors agree with the Debtor that judicial economy and efficiency is best served by staying litigation thereof until after the order for relief is entered. *See* Debtor's Obj. to Lenders' Mot. to Dismiss at p. 5. The arguments rely on a number of contested or incorrect assumptions, including the value of the Project and the Lenders' claims related thereto, the validity, amount and priority of the Lenders' liens, and that the Debtor has no assets other than its interest in the Project,[15] much of which will require discovery, including expert discovery and reports, and an evidentiary hearing.

38. It is entirely plausible that the Project is worth more than the aggregated value of all valid liens against it. In addition, the Lenders' concern about the financial wherewithal of the estate to provide adequate protection is not only based on contested assumptions (*i.e.,* regarding the validity and amount of the Lenders' liens and value of the Project), but is belied by the fact that "[i]f the Involuntary Petition is not dismissed, then the Alleged Debtor would most likely convert this case to a chapter 11 case…." Debtor's Obj. to Lenders' Mot. to Dismiss at p. 5. As a practical matter, if this case was to proceed under chapter 11, the Debtor would presumably have or obtain sufficient finding to provide adequate protection, as necessary.

39. Litigation of the issues underlying the Lenders' lift stay request will be completely unnecessary to the extent this Court dismisses the Involuntary Petition and the lift stay request is mooted. To avoid the potential substantial waste of resources, judicial economy

---

[15] *See fns.* 9-12, *supra.*

and efficiency necessitate that the Lenders' lift stay request be stayed pending entry of the order for relief.[16]

40.     The Petitioning Creditors respectfully submit that the October 1, 2021 hearing should act as a status conference on the stay relief motion, consistent with Local Rule 4001-1(c)(iii) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and that an appropriate schedule be entered to address the Lenders' lift stay request.

WHEREFORE, based on the foregoing, the Petitioning Creditors respectfully request this Court (i) enter an order denying the relief requested in the Lenders' Motion to Dismiss, (ii) enter an order for relief with respect to the Involuntary Petition in this case, (iii) enter a scheduling order to address the Lenders' request for stay relief, and (iv) grant such other and further relief as is just and proper.

Dated:  September 9, 2021
        Wilmington, DE

                                        **VENABLE LLP**

                                        */s/ Daniel A. O'Brien*
                                        Daniel A. O'Brien (No. 4897)
                                        1201 North Market Street, Suite 1400
                                        Wilmington, DE 19801
                                        Tel: 302.298.3535
                                        Fax: 302.298.3550
                                        daobrien@venable.com

                                                and

---

[16] In addition, as set forth in detail on pages 9-10 of the Motion to Stay, the Lenders' alternative lift stay request is for all practical purposes a challenge to the Involuntary Petition. Indeed, the purported bad faith of the Petitioning Creditors, which supports Lenders' dismissal request, is one of the bases for which the Lenders seek stay relief. Further, the Project is the Debtor's primary asset. Under the circumstances, if the Court were to entertain the Lenders' request and grant stay relief before entry of the order for relief, the bankruptcy case would, for all intents and purposes, end during the gap period. As such, the request is, at a minimum, a collateral attack on the Involuntary Petition and, since only the Debtor can contest the Involuntary Petition, as discussed in section I, *supra*, litigation and adjudication of the lift stay request should be stayed pending entry of an order for relief.

Jeffrey S. Sabin, Esq.
Gary L. Rubin, Esq.
James E. Frankel, Esq.
Carol Weiner Levy, Esq.
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel: (212) 307-5500
Fax: (212) 307-5598
jssabin@venable.com
glrubin@venable.com
jefrankel@venable.com
cweinerlevy@venable.com

*Attorneys for the Petitioning Creditors*