## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 7 (Involuntary)** |
| **PARK PLACE DEVELOPMENT PRIMARY, LLC** | **Case No. 21-10849 (CSS)** |
| **Alleged Debtor.** | **Re: D.I. 51, 52, 69** |

**LENDERS' (A) REPLY TO THE PETITIONING CREDITORS' OBJECTION
TO LENDERS' MOTION FOR ENTRY OF AN ORDER DISMISSING THE
INVOLUNTARY PETITION PURSUANT TO SECTIONS 707 AND 305 OR, IN
THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY;
(B) OBJECTION TO THE PETITIONING CREDITORS' MOTION TO STAY; AND (C)
LIMITED REPLY TO THE ALLEGED DEBTOR'S RESPONSE AND LIMITED
OBJECTION OF THE LENDERS' MOTION FOR ENTRY OF
AN ORDER DISMISSING THE INVOLUNTARY PETITION PURSUANT TO 11 U.S.C.
707(a) AND 305(a) OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1), (2)**

Malayan Banking Berhad, New York Branch (the "Administrative Agent"), as Administrative Agent for Malayan Banking Berhad, London Branch, Intesa Sanpaolo S.P.A., New York Branch, Warba Bank K.S.C.P., and 45 Park Place Investments, LLC (collectively with the Administrative Agent, the "Lenders") hereby (A) reply to the *Objection of the Petitioning Creditors to Motion of Lenders for Entry of an Order Dismissing the Involuntary Petition Pursuant to Sections 707 and 305 or, in the Alternative, Granting Relief from the Automatic Stay* (D.I. 69) (the "Petitioning Creditors' Objection") filed by Permasteelisa North America Corp. ("PNA"), Construction Realty Safety Group Inc. ("CRS"), Trade Off Plus, LLC ("Trade Off Plus"), S&E Bridge & Scaffold LLC ("S&E"), and Ismael Leyva Architect, P.C. ("Ismael") (collectively, the "Petitioning Creditors"); (B) object to the *Petitioning Creditors' Motion for Entry of an Order*

1

*Staying the Lenders' Motion to Dismiss the Involuntary Petition or, in the Alternative, Granting Relief from the Automatic Stay* (D.I. 52)  (the "<u>Petitioning Creditors' Motion to Stay</u>"); and (C) reply to the *Response and Limited Objection of the Alleged Debtor to Lenders' Motion to Dismiss the Involuntary Petition or, in the Alternative, Granting Relief from the Automatic Stay* (D.I. 51) (the "<u>AD Response</u>") and respectfully state as follows:

## <u>PRELIMINARY STATEMENT</u>

1.       The Petitioning Creditors incorrectly argue that the Lenders do not have standing to move for dismissal under sections 707 and 305 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") before an order for relief is entered in this case.  They assert that since only the alleged debtor may answer an involuntary petition under section 303, a non-petitioning creditor may not move to dismiss an involuntary petition.  Unlike section 303, however, motions to dismiss under sections 707 and 305 are not limited by party or stage in the case.  To the contrary, any interested party may seek dismissal of a bankruptcy proceeding under sections 707 and 305 challenging a petition filed for an improper purpose or in bad faith, as the Lenders have done in this case.  Here, the Lenders are not challenging the sufficiency of the petition or the qualifications of the Petitioning Creditors under section 303.  Instead, the Lenders are challenging the purpose of the bankruptcy case as a whole because even if the Petition meets every requirement under section 303, it does not serve a valid bankruptcy purpose, was filed in bad faith, and should be dismissed under sections 707 and 305.

2.       Moreover, the Petitioning Creditors' argument would lead to a bizarre and judicially inefficient process.  Given that the Court is going to be considering whether the petition was filed

2

in good faith as part of the Alleged Debtor's opposition to the Petition, it makes little sense for the Court to consider the Alleged Debtor's good faith arguments, render a decision on that and then address the Lenders' good faith argument.

3. Additionally, the Petitioning Creditors have tried to go to great lengths to demonstrate that bankruptcy court is the proper forum for this dispute but their assertions actually support the Lenders' and Alleged Debtor's argument that this Involuntary Petition is an improper use of the bankruptcy process and that this case should be dismissed. More specifically, the Petitioning Creditors argue that it is "plausible" that there is more value in the Project, yet they fail to provide any evidence regarding the valuation of the Project. If the Petitioning Creditors truly believed the valuation was incorrect, they had approximately nine (9) weeks to obtain an appraisal of the Property to support their assertion. Instead, in an attempt to manufacture value where none exists, the Petitioning Creditors assert a litany of theories on possible claims that a chapter 7 trustee could pursue based on half-truths and a misunderstanding of various agreements. The Petitioning Creditors' claims, however, are meritless and that there are simply no assets available to support those investigations. While, the Petitioning Creditors suggest that either the Lenders could provide the funding or the Alleged Debtor could convert the case to chapter 11 and secure financing, this is merely an attempt by the Petitioning Creditors to shift the costs of litigating these issues from themselves (as they would bear the cost in the Mortgage Foreclose Action) to the Lenders who have liens on all of the assets.

4. If an order for relief is granted and a chapter 7 trustee appointed, the trustee will find a single asset secured by the Lenders' liens and tens of millions of dollars in mechanics liens. In the event the trustee sought to pursue the Petitioning Creditors' claims, with no other assets to

DOCS_DE:236163.1 68794/001

pull from, the trustee would need funds to hire professionals and engage in prolonged litigation that has already started in another forum. Alternatively, if the trustee perceives the Petitioning Creditors' claims to be valueless, then the trustee may decide to immediately sell the Property, which has an as-is value of approximately $87,900,000. Casson Decl., ¶ 11 & Ex. B. Any value that could be realized from the sale of the Property would be well below the amount owed to the Lenders and certainly well below the combined liens on the Property. Thus, there would be no value created for the benefit of the allegedly 85 creditors, and as a result, no reason for this case to proceed in bankruptcy when any value that does exist can be properly distributed in the Mortgage Foreclosure Action.

5. Further, the Petitioning Creditors argue that the Court should stay the Lenders' request for relief from stay, but the Petitioning Creditors' argument is unavailing. The Lenders' request for relief from stay has been pending for over 74 days, well past the statutory requirements of section 362(e)(1), without a hearing. While the Lenders agreed to a continuation of the initial hearing date to permit the Petitioning Creditors to negotiate with the Alleged Debtor thus consenting to the stay remaining in effect to the continued hearing date (*see* Local Rule 4001-1(b)), the Lenders do not consent to a further deferral of the hearing. Under section 362(e)(1), the hearing on the stay relief must proceed or it will be deemed automatically granted.

6. Ultimately, nothing in the Petitioning Creditors' Objection changes the fact there is a pending Mortgage Foreclosure Action in a proper forum where the parties were already briefing dispositive motions that would resolve the issues raised in their Objection, nor the fact that there is Receiver in place with the power and authority to "preserve and conserve the Mortgaged Property, including without limitation taking any and all steps necessary to protect, preserve, and maintain"

the various rights and entitlements associated with the Property" until the State Court renders

judgment on the various filing.  Parrott Decl. ¶ 7 & Ex. I.  Thus, the Involuntary Petition should be

dismissed so that the State Court can address all of the issues currently pending before it.

## <u>REPLY</u>

I.     **The Lenders have Standing to Move for Dismissal of an Involuntary Petition Pursuant to Sections 707(a) and 305(a), and the Lenders Requests for Relief Should Not Be Stayed**

7.      The Petitioning Creditors' arguments, and the cases cited in support thereof, stand

for the proposition that only the alleged debtor may challenge an involuntary petition under section

303.  The policy for limiting the challenge to eligibility under section 303 is to prevent creditors

from seeking to obtain an unfair advantage such as avoiding potential preference or avoidance

actions.  *In re Taylor & Assocs., L.P.*, 191 B.R. 374, 379 (Bankr. E.D. Tenn. 1996).  However, these

arguments and authorities are irrelevant here because the Lenders do not a challenge the eligibility

requirements in section 303.   Instead, the Lenders are challenging the purpose of the bankruptcy

case as a whole, and any interested party may seek dismissal of a bankruptcy proceeding under

sections 707 and 305 challenging a petition filed for an improper purpose or in bad faith.  The

distinction between section 303 and sections 707 and 305 is supported by the Bankruptcy Code,

case law and congressional policy

A.     **The Lenders have Standing to Move for Dismissal of an Involuntary Petition Pursuant to Section 707(a)**

8.      Pursuant to section 303(d), only "[t]he debtor, or a general partner in a partnership

debtor that did not join in the petition, may file an answer to a[n] [involuntary] petition under this

section."  11 U.S.C. § 303(d).  However, pursuant to section 707(a), any interested party may seek

5

dismissal of a bankruptcy proceeding, and "the court may dismiss a case . . . after notice and a hearing . . . for cause . . . ." 11 U.S.C. § 707(a). The language of each section is plain and unambiguous, and unlike Section 303, Congress did not prohibit non-debtor parties from filing a motion to dismiss under section 707, nor the timing of such motions. Consequently, a non-petitioning creditor as an interested party may move to dismiss an involuntary petition under Section 707, and this Court may dismiss the case for cause.

9. Moreover, the case law cited by the Petitioning Creditors further supports the distinction between dismissal under sections 303 and 707. For example, in *QDN*, a non-petitioning creditor argued that there were defects with the involuntary petition, and as a result, the bankruptcy court lacked subject matter jurisdiction. *In re QDN, LLC*, 363 F. App'x 873, 875–76 (3d Cir. 2010). The court found that the non-petitioning creditor did not have standing "to plead defects in the involuntary petition" under section 303. *Id.* at 875. Similarly, in *Earl's Tire*, a non-petitioning creditor argued that there was a defect with the involuntary petition, and as a result, the bankruptcy court lacked subject matter jurisdiction. *In re Earl's Tire Serv.*, Inc., 6 B.R. 1019, 1020 (D. Del. 1980). The bankruptcy court rejected the non-petitioning creditor's argument because its contentions "went to a defect in the bankruptcy petition that properly could have been raised only by the debtor" under section 303. *Id.* at 1023. In both of the aforementioned cases cited by the Petitioning Creditors, non-petitioning creditors moved for dismissal under section 303 and not section 707.

10. In contrast to *QDN* and *Earl's Tire*, the non-petitioning creditor in *MacFarlane,* like the Lenders here, moved for dismissal under sections 707(a) and 305(a). Finding that section 707(a) "covers both voluntary and involuntary cases," the court dismissed the case because the

6

involuntary petition was filed in bad faith. *In re MacFarlane Webster Assocs.*, 121 B.R. 694, 696, 704 (Bankr. S.D.N.Y. 1990). The court noted that unlike section 303, Congress did not prohibit non-debtors from filing a motion to dismiss under 707, nor dictate the timing such motions:

> Congress surely knew how to limit section 707(a) to preclude motions to dismiss by creditors had it so intended. *See* Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 535-36 (1947). It having failed to do so, section 707(a) must be construed to permit any party-in-interest to move the court for dismissal of the bankruptcy case on abuse constituting cause, as opposed to any of the grounds on which a debtor can oppose a petition, *see* 11 U.S.C. § 303(h). Thus, construed, the words of both sections are enforced consistent with each other and the ability of the courts to deal with cause prejudicial to creditors, *see* 11 U.S.C. § 707(a)(1), is preserved.

*Id.* at 701. Like the non-petitioning creditor in *MacFarlane*, the Lenders are challenging the purpose of the bankruptcy case as a whole. Specifically, the evidence will show that even if the involuntary proceeding meets every requirement under section 303, it does not serve a valid bankruptcy purpose, was filed in bad faith, and should be dismissed under sections 707(a) and 305(a).

11.     Additionally, the congressional polices underpinning sections 303 and 707 support the distinction between dismissal under sections 303 and 707. The policy for limiting the challenge to eligibility under section 303 is to prevent creditors from seeking to obtain an unfair advantage such as avoiding potential preference or avoidance actions and is inapplicable here. *See* H.R. Rep. No. 1409, 75th Cong., 1st Sess. 17 (1937). In both *QDN* and *Earl's Tire*, the non-petitioning creditors were motivated by an improper goal, to avoid a preference action, which is the very situation Congress sought to avoid by precluding non-petitioning creditors from responding under 303. *In re QDN, LLC*, 363 F. App'x 873 at 876; *In re Earl's Tire Serv., Inc.*, 6 B.R. at 1020. In both

DOCS_DE:236163.1 68794/001

cases, the bankruptcy court correctly denied the non-petitioning creditors attempt to improperly dismiss those cases under Section 303.

12.     However, the policy underpinning section 707(a) serves a far different but equally important purpose, that is to allow any interested party to bring to the court's attention the use of bankruptcy for an improper purpose or in bad faith.  *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 119 (3d Cir. 2004) ("At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy . . . ."); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("[A] good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with 'clean hands.'").

### B.      The Lenders have Standing to Move for Abstention Pursuant to Section 305(a)

13.     Pursuant to section 305 of the Code, "the court, after notice and hearing, may dismiss a case under this title . . . at any time if — (1) the interest of the creditors and the debtor would be better served by such dismissal or suspension."  11 U.S.C. § 305(a).  While dismissal under section 305 may have the same practical effect as dismissal under section 707, "[t]he legislative history . . . describes section 305 as permitting the court to 'decline jurisdiction' by means of '[a]bstention under this section.'"  2 Collier on Bankruptcy ¶ 305.01 (16th 2021).

14.     The Petitioning Creditors argue that a "creditor may only seek dismissal pursuant to section 305(a) after the order for relief is entered and the case proceeds as an involuntary

8

proceeding." Petitioning Creditors' Motion to Stay ¶ 19.  However, as noted above, neither section 707 nor section 305 contains such limiting language and thus the Court may consider the Lenders' request for abstention under section 305 at this juncture.

       **C.**    **The Petitioning Creditors' Requested Relief, if Granted, Would Be a Waste of Judicial Resources and Economy**

    15.     The Petitioning Creditors cite to *In re Rosenblum*, 545 B.R. 846, 874 (Bankr. E.D. Pa. 2016) to support their position that "[s]taying the Lenders' Motion to Dismiss until resolution of the Alleged Debtor's Motion to Dismiss will promote judicial economy and efficiency by either narrowing the issues related to the Lenders' Motion to Dismiss or rendering it altogether moot." Petitioning Creditors' Motion to Stay ¶¶ 21-22.  However, *Rosenblum* is inapposite.  In *Rosenblum*, the court found that "because the outcome of the State Litigation w[ould] certainly impact th[e] Court's determination of the Motion to Dismiss, . . .  it [was] appropriate to hold the Debtor's bankruptcy proceeding in abeyance pending the  conclusion of the State Litigation." 545 B.R. 874-75.  The court found "[i]t . . .  necessary to hold the[] proceedings in abeyance to maximize the 'economy of time and effort for [the Court], counsel, and for litigants.'"  *Id*. at 875.  Here, unlike in *Rosenblum,* there are not two separate forums, with one forum affecting the outcome of another. The Mortgage Foreclosure Action is stayed and the Bankruptcy Court has before it two motions to dismiss with substantially similar facts, exactly the same parties and witnesses, and the same evidence.  In fact, both the Petitioning Creditors and the Alleged Debtor have reserved the right to rely on evidence submitted by the Lenders for the hearing.[1]

---

[1]    Pursuant to the *Court's Order Approving Stipulation Extending Deadline for Petitioning Creditors to Respond to (i) Alleged Debtor's Motion for Dismissal of, or Abstention from, Involuntary Petition and (ii) Lenders' Motion for Entry of an Order Dismissing the Involuntary Petition* (the "<u>Stipulation</u>"), the parties exchanged

9

16.	The Court should consider the practical effect of the relief the Petitioning Creditors are requesting.  In effect, the Petitioning Creditors are asking the Court to hold a hearing on eligibility for entry of the order for relief on October 1st at 10am, and if the Court finds in favor of the Petitioning Creditors on eligibility, then the Court may hold a hearing immediately thereafter to consider dismissal of the petition on the grounds that the bankruptcy proceeding lacks a valid purpose and that the petition was filed in bad faith.  Structuring the proceedings in such a manner would be a waste of judicial resources and economy because it would force the Court to hold two separate hearings on similar facts and require the same witnesses to participate in multiple hearings.

**II.	This Case Should Be Dismissed with Prejudice For "Cause" Pursuant to Section 707(a) of the Bankruptcy Code Because the Involuntary Petition Was Not Filed in Good Faith**

**A.	The Involuntary Petition Serves No Valid Bankruptcy Purpose**

17.	The Petitioning Creditors argue that "the purpose of the Involuntary Petition was to protect and preserve the value of the unfinished Project and seek a trustee who would have the power and authority to expeditiously sell the Project, free and clear of lien disputes, and investigate, and potentially prosecute, claims arising out of the Project-related transactions for the benefit of all 85+ creditors of the estate."  Petitioning Creditors' Objection ¶ 22.  While the foregoing purposes would be perfectly in line with the purposes of chapter 7 under different facts, it is not the case here.

---

evidence and witness lists on September 14, 2021.  Both the Alleged Debtor and the Petitioning Creditors reserved the right to rely on the Lenders' evidence and witnesses at the October 1 hearing.

### 1. *The Alleged Debtor's Single Asset is Worth Less than the Debt It Secures*

18.      As it the stands, the Property is valued at $87,900,000. Casson Decl., ¶ 11 & Ex. B. The Alleged Debtor has no assets other than its interest in the Property.  The Alleged Debtor owes not less than $130,856,015.18 to the Lenders under the Facility Agreements, Abdullah Decl. ¶ 5 & Ex. A, and there are mechanics liens in excess of $25,000,000 filed against the Property.  Parrot Decl. ¶ 6 & Ex. H.  Accordingly, there is no value in the Alleged Debtor's single asset for the alleged 85 unsecured creditors.  The Petitioning Creditors assert that "[i]t is entirely plausible that the Project is worth more than the aggregated value of all valid liens against it," (Petitioning Creditors' Objection ¶ 24) but they failed to provide any evidence to dispute the recent valuation of the Property obtained by the Lenders.

19.      Further, the Petitioning Creditors state that the Alleged Debtor's equity cushion is irrelevant when considering the efficacy and purpose of a bankruptcy case.  Petitioning Creditors' Objection ¶ 22.  However, simple logic dictates the opposite conclusion.  If the Alleged Debtor has no equity in its single asset, then there is no value "to marshal . . . in order to achieve a greater pro rata distribution among a debtor's various unsecured creditors than what would be otherwise available outside of bankruptcy." *In re Forever Green Ath. Fields, Inc.*, 500 B.R. 413, 425 (Bankr. E.D. Pa. 2013).  If there are no assets available to satisfy the claims of unsecured creditors, then there is no reason to proceed in bankruptcy when the State Court is capable of determining how that value should be distributed to the secured creditors.

### 2. *The Petitioning Creditors' Assertions Regarding "Plausible" Avoidance Claims are Meritless*

20.      In an attempt to manufacture value where none exists, the Petitioning Creditors make a number of conclusory assertions and unwarranted and unsupported assumptions in order

11

to reference the possibility of a trustee pursuing "plausible" claims against the Alleged Debtor and Lenders. In any event, the Petitioning Creditors fail to take their assertions to their ultimate conclusions, which would be to change the priority of liens, not extinguish them altogether.

21.     For example, the Petitioning Creditors allege in the Mortgage Foreclosure Action and here that the Alleged Debtor and Lenders failed to comply with New York's Lien Law, specifically that there were misstatements in the Section 22 affidavit. Petitioning Creditors' Objection to the Debtor's Motion to Dismiss (hereinafter "<u>PCs' Obj. to AD's Motion</u>") ¶ 25. The Lenders have already spent pages in their opening summary judgment brief in the State Court Action addressing compliance with Section 22. While the Lenders maintain in the Mortgage Foreclosure Action and again here that this claim is meritless, in the event that there is a material misstatement in a Section 22 Affidavit, under New York Lien Law, the mortgage of the Lender is subordinated to the mechanic's lienors, not invalidated. *Nanuet Nat'l Bank v. Eckerson Terrace, Inc.*, 402 N.Y.S.2d 42, 43 (App. Div. 2nd Dept. 1978) ("Subordination of the mortgage to a subsequently filed mechanic's lien is the penalty imposed for not filing a true and accurate affidavit."). Therefore, while the relative priority of the liens on the Property would change in this scenario, no new value would be created for the benefit of unsecured creditors.

22.     Additionally, the Petitioning Creditors allege that there is a possible Delaware ultra vires claim because "[t]he Petitioning Creditors believe that the Debtor's sole purpose is to own and develop the Project, not to buy and sell 'Metals'." PCs' Obj. to AD's Motion ¶ 22. However, pursuant to section 3.2 of the Building Facility Agreement (the "<u>BFA</u>"), the Alleged Debtor represented that it "(a) was organized solely for the purpose of (i) acquiring, developing, owning, holding, selling, leasing, transferring, exchanging, managing and operating the Project, entering

12

into this Agreement with Administrative Agent, refinancing the Project in connection with a permitted repayment of the Facility, ***and transacting all lawful business that is incident, necessary and appropriate to accomplish the foregoing . . . .***" (emphasis added). Moreover, the Alleged Debtor's Limited Liability Agreement states that the "purpose to be conducted or promoted by the Company . . . [is] to (i) to own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with that certain parcel of real property . . . and ***(ii) to engage in any lawful act or activity . . . that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.***" (emphasis added). The Petitioning Creditors have not and cannot provide any authority whatsoever that removes the finance arrangements at issue from part (ii) of either of the above stated purposes. Like the Section 22 Affidavit claim, this claim similarly lacks merit, and in any event, is more appropriately addressed by the State Court.

23. The Petitioning Creditors similarly provide snippets of the other documents and claim that there is the potential for a plausible claim after making several inferential leaps. While these claims are completely without merit, the Petitioning Creditors simply ignore that the State Court Action provided them an adequate forum in which they could seek to raise these arguments.

### 3. The Typical Protections Provided by a Bankruptcy Filing are Unnecessary and Duplicative

24. As noted previously, if a chapter 7 trustee sought to pursue any one of the claims asserted by the Petitioning Creditors, then the ultimate result at most would be an altered order of priority between the Lenders and the Petitioning Creditors (who are allegedly secured creditors), but there would likely be no new value created for the benefit of other creditors. An involuntary chapter 7 petition must seek "to create or preserve some value that would otherwise be lost-not

13

merely distributed to a different stakeholder-outside of bankruptcy." *Forever Green*, 500 B.R. at 425. Here, there is merely a dispute regarding priority of distribution to secured lenders. The State Court is perfectly capable of resolving lien disputes, and the very issues the Petitioning Creditors raise in their Objection have been or can be raised in the Mortgage Foreclosure Action. To grant an order for relief and appoint a trustee in such circumstances is unnecessary and does nothing but shift the costs of resolving lien disputes to the estate and the trustee.

**B.       The Involuntary Petition Was Filed in Bad Faith and Is Nothing More than a Litigation Tactic**

25.       The Petitioning Creditors assert that the filing of the Involuntary Petition days before their responses were due to the Summary Judgement Motion in the Mortgage Foreclosure Action was not in fact a litigation tactic withers upon scrutiny. Petitioning Creditors' Objection ¶ 27. They claim "the Involuntary Petition was filed after an extensive review of the transactions and circumstances surrounding the BFA and the potential claims associated therewith that may be investigated and brought by a chapter 7 trustee . . . ." Petitioning Creditors' Objection ¶ 27. However, the alleged circumstances surrounding the BFA were not "recent discoveries." Indeed, the BFA was publicly available at the New York County Clerk's office prior to the commencement of the Mortgage Foreclosure Action and during its pendency. Moreover, the involuntary bankruptcy petition was filed more than a year after the Mortgage Foreclosure Action was commenced and four months after the Summary Judgment Motion was filed. The Petitioning Creditors could have filed an involuntary petition months ago, but instead they agreed to a briefing schedule on Lenders' Summary Judgment Motion to make the same frivolous arguments that they

have made here and then waited until two days before their response was due on the Summary Judgment Motion to file this Involuntary Petition.

26.     The Petitioning Creditors further assert that the Mortgage "Foreclosure Action seems to be no closer to its end than to its beginning."  Petitioning Creditors' Objection ¶ 27. However, the Petitioning Creditors fail to take responsibility for their role in the delay.  Were it not for the filing of the Involuntary Petition, the case in State Court would be proceeding towards a resolution.  However, instead of utilizing the time provided by the briefing schedule in the Mortgage Foreclosure Action, the Petitioning Creditors sat idly by for months until they filed this Involuntary Petition.

27.     Because the Involuntary Petition was not filed for a valid bankruptcy purpose and as a litigation tactic, the Involuntary Petition was not filed in good faith and should be dismissed for cause under section 707(a).

## III.     The Court Should Abstain From Exercising Its Jurisdiction Over This Chapter 7 Case and Dismiss It Pursuant to Section 305(a) of the Bankruptcy Code

28.     The petitioning Creditors argue that "abstention will only cause delay, which benefits nobody but the Debtor's shareholder, Sharif . . . [and that] both the Debtor, its assets, and all creditors will be better served by the entry of an order for relief in this case and the appointment of a chapter 7 trustee." Petitioning Creditors' Objection ¶ 34.  Quite the opposite is true because the Involuntary Petition benefits no one other than the Petitioning Creditors by shifting the costs of litigating their lien disputes to the estate (and thus the Lenders) while further diminishing the value of the Alleged Debtor's single asset.

15

29.     While the Alleged Debtor may have "over 85 creditors, many of whom are not parties to the Foreclosure Action," as described above in section II.A.1, there is no value in the Alleged Debtor's single asset to be distributed to those creditors. Thus, it is of no consequence that those creditors are not parties in the Mortgage Foreclosure Action. Further, the Petitioning Creditors argue that "[t]here is simply no judicial economy to be served by relying on the Foreclosure Action." Petitioning Creditors' Objection ¶ 33. However, as set forth in the Lenders' Motion to Dismiss, it would be a waste of judicial resources to begin anew in another forum when the issues raised by the Petitioning Creditors are already being considered in the State Court action. *See* Summary Judgement Motion. To appoint a trustee for the purpose of settling a lien dispute would diminish the already depleting value of the Alleged Debtor's single asset, especially when there is an existing forum that can properly resolve the priority dispute without the added expense of a bankruptcy case.

30.     Thus, to the extent the Court does not dismiss this chapter 7 case pursuant to section 707(a), the Lenders submit that the Court should nonetheless abstain from exercising its jurisdiction over this chapter 7 case and dismiss it pursuant to section 305(a)(l) of the Bankruptcy Code.

## IV.     The Court Should Grant Relief from the Automatic Stay

31.     In the Lenders' Motion to Dismiss Part V, the Lenders argue that the automatic stay should be lifted pursuant to section 362(d)(1) and (d)(2) because the Lenders' interest in the Property is not adequately protected and because the Alleged Debtor lacks an equity cushion in the collateral. Both of those are sufficient grounds for granting relief from the automatic stay. The Petitioning Creditors request "that the October 1, 2021 hearing should act as a status conference

on the stay relief motion, consistent with Local Rule 4001-1(c)(iii) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware." Petitioning Creditors' Objection ¶ 40. However, the Lenders' request for relief from stay has been pending for over 74 days, well past the statutory requirements of section 362(e)(1), without a hearing:

> Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section.

11 U.S.C. ¶ 362(e)(1).

32.     While the Lenders agreed to a continuation of the initial hearing date to permit the Petitioning Creditors to negotiate with the Alleged Debtor thus consenting to the stay remaining in effect to the continued hearing date (*see* Local Rule 4001-1(b)), the Lenders do not consent to a further deferral of the hearing.  Under section 362(e)(1), the hearing on the stay relief must proceed or it will be deemed automatically granted. Under section 362(e)(1), the hearing on the stay relief must proceed or it will be deemed automatically granted.

## V.     Dismissal of the Involuntary Petition Should Be With Prejudice as to the Petitioning Creditors Pursuant to Section 349(a)

33.     In the Lenders' Motion to Dismiss Part IV, the Lenders requested that the Court "dismiss the Involuntary Petition with prejudice to prevent the Alleged Debtor and its creditors from filing successive petitions in this or another jurisdiction and further preventing consideration of the Lenders' Summary Judgment Motion in the Mortgage Foreclosure Action."     Lenders'

17

Motion to Dismiss ¶ 51.  In response, the Alleged Debtor requested that dismissal with prejudice be limited to the Petitioning Creditors.  AD Response ¶ 5.  The Lenders agree with the Alleged Debtor that the Involuntary Petition should be dismissed with prejudice only as to the Petitioning Creditors but not as to the Alleged Debtor.  Recognizing the Court's previously stated concern with an unlimited prohibition on parties exercising their rights, the Lenders request that the Court grant dismissal with prejudice as to the Petitioning Creditors through the duration of the Mortgage Foreclosure Action.

## CONCLUSION

WHEREFORE, the Lenders respectfully request entry of an order granting the Lenders' Motion to Dismiss, denying the Petitioning Creditors' Motion to Stay and granting such other relief as may be necessary or appropriate.

DOCS_DE:236163.1 68794/001

Dated: September 20, 2021    /s/ Laura Davis Jones
Wilmington, Delaware    Laura Davis Jones, Esq. (DE Bar No. 2436)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com

**-and-**

Gary L. Kaplan, Esq.
Matthew D. Parrott, Esq.
Andrew M. Minear, Esq.
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone:    (212) 859-8000
Facsimile:    (212) 859-4000
Email:    Gary.Kaplan@friedfrank.com
    Matthew.Parrott@friedfrank.com
    Andrew.Minear@friedfrank.com

*Counsel for Malayan Banking Berhad,*
*New York Branch, as Administrative Agent for*
*Malayan Banking Berhad, London Branch, Intesa*
*Sanpaolo S.P.A., New York Branch, Warba Bank*
*K.S.C.P., and 45 Park Place Investments, LLC*